Thompson, J.
delivered the opinion of the court. The great and important questions arising out of this Case are, whether the paper writing produced in evidence ought to be considered as a representation or not, or was admissible *160 to explain the intention of the parties (a) I have entertained very considerable doubts on the subject; and considering the importance of the case, as it respects the amount of property involved, and the very able and elaborate manner in which it was argued on both sides, it is with considerable diffidence that-I pronounce, the opinion, which, after much reflection and examination, I have formed, and in which the court concur. We think the writing in question cannot be deemed a representation ; neither was it admissible evidence to explain the intention of the parties to the contract. It could be received for no other purpose than to establish a fraud. A representation is de? fined tobe a collateral statement, *either by parol, or in writing, of such facts or circumstances relative to the proposed adventure, and not inserted in the policy, ,as are necessary for the information of the assurer, to enable him to form a just estimate of the risk. If the fact or circumstance appear on the face of the policy, it becomes a warranty and not a representation: it is essential, therefore, that it be of some matter out of, and collateral to, the contract, and makes no part of the policy. It cannot be said that this policy is silent on the subject of the ports to which this vessel was to sail; they are expressly made a part of the contract, and that, too, with all necessary legal certainty. She was to go to two ports on the coast of Brazil. Supposing there had been no evidence whatever offered of any communications between the parties, previous to the signing of the policy, would it have been void for uncertainty ? clearly not: the legal construction, in such a case, would have been to' two ports on the coast of Brazil, at the election of the assured. If the course ol the voyage,-then, be described in the policy with all necessary and legal certainty, this could not be considered a matter collateral to, and making no part of, the instrument. The writing offered to explain it could not, therefore, be *161 received as a representation, within the .rules ofla.w above laid down. This writing must, we think, be viewed in the light of a series of propositions made on the one side, and answers given on the other, leading to a contract to be consummated by the policy, and intended to serve as a memorandum, whereby to fill it up, and must fall within that very salutary rule of law, that where an agreement is reduced to writing, all previous treaties are resolved into that. To admit a loose and almost unintelligible memorandum, which appears to have undergone.some alterations even since the commencement of this very action, in any manner to control the policy, (a) appears to us to lead to too great uncertainty, especially as it is stated in this case that several personal communications took place between the parties previous to the signing of the policy. There appears to be a substantial reason for giving, the latitude-contained in the policy. The parties contemplated an il: licit trade, and it was not certain the vessel- could enter the port she wished: it was therefore *left open, at the election of- the assured, according.to circumstances. It remains to be examined, whether this writing was competent testimony to explain the policy. It is well observed by Mr. Justiee Blackstone, in the case of Preston v. Merceau, that courts should be very.cautious in admitting any. evidence to supply or explain, written con-' *162 tracts, and. that they never ought to be suffered so as-to contradict or explain away an explicit agreement. In the case of Meers v. Ansel, the court said, no parol evidence is admissible to substantially vary, alter or impugn a written agreement; neither is it admissible to abate or extend a deed. No ambiguity appears on the face of this policy ; the words arc intelligible, without any aid dehors the instrument. The testimony offered is calculated materially to alter and restrain the policy. As it now stands, the assured had undoubtedly a right to go to any two ports on the coast of Brazil, at their election. If the previous communication on the subject of the voyage is to control the policy, the assured would be restricted to two ports, within four or five hours’-sail of each other. This, considering the nature of the trade they were engaged in, might very materially affect, if not in a great measure defeat, the voyage ; so far as this writing would tend to establish fraud in the assured, the underwriters have had the benefit of it. It was for this purpose submitted to the jury, and their decision upon it ought, I think, to be final and conclusive. I see no marks of fraud to taint the contract: the deduction of the premium from 33 1-2 to 27 1-2 per cent, appears to have been occasioned by reason of the assured’s taking on themselves the risk of seizure in port. This, in a forced trade like the present, was a very great diminution of the risk to be borne by the underwriters.
The voyage contemplated by the assured might have been o Rio Janeiro, and St. Catharine’s, as stated by Mr. Blagge: still they might not wish to be restricted to those places; otherwise it is difficult to conceive why they were not inserted in the policy. They choose rather to have a discretion left them as to the ports, and to which the underwriters must have assented, by subscribing the policy in its present terms. James Watson, and the other witnesses who were examined respecting the premium do not say that 27 1-2 per *cent. was not an adequate premium for the voyage insured. They only *163 spealc of a comparative difference of premium between two voyages, to neither of wbicb were the assured restricted by this policy. For it has not been pretended by the underwriters that they were bound to go either to Eio Janeiro or St. Catharine’s.
The argument of this case has been accompanied with a motion for a new trial, on the ground of the discovery of new testimony. The testimony alluded to is said to be a copy of the proceedings and condemnation at Para, against this vessel and cargo. In order to grant a new trial on this ground, it ought to appear that the testimony has been discovered since the last trial; or that no laches is imputable to the party, and that the testimony is material. In Ihe present case, there are numerous objections against granting the application. It does not appear from the affidavit, that this testimony has been discovered since the last trial, but only that it arrived in New York since that time. From the nature of the evidence, it must have been discovered as soon as the cause of the loss was known, and of course there must have been either a want of due diligence in procuring it, or, if sufficient reasons for the delay could have been shown, application ought to have been made to postpone the former trial. Independent of this circumstance) however, there are objections to the admis sibility of the testimony offered, it not being duly authen ticated. It purports to come through the secretary of state, for foreign affairs, of the kingdom of Porlugal. If if be, as he has contended, a regulation of the government of Portugal, that all judgments and decrees rendered at Para are transmitted to Lisbon, and registered in the department of state, that regulation should have been shown in some authentic way, and the document in question would then appear to come through the proper channel; and, if duly authenticated, might be competent prima facie evidence of what it contains. But nothing appears to show that such is the regulation of the mother country with her colony. This document cannot be considered an exemplification of a judgment. That should be under the great seal; this ia only under the seal of arms, of the secretary of state; neither is it a sworn copy of the original, and- it cannot be received as an office copy, it *not appearing that the secretary of state has officially the custody of'records of this description. The translation of this document from the Portuguese into the English language, ought to have been made on oath; interpreters are always sworn. The translation of a consul, not on oath, can have no greater validity than that of any other respectable man.' But, laying aside all objections as to the manner in which this document is authenticated, we do not consider it material testimony. The purposes for which it is offered are, 1. To show that this, vessel was seized in port, and sp, the loss not within the risks assumed by the underwriters; and, 2. That.she had on board contraband goods, contrary to the warranty of the assured.
In .answer to the first, it is expressly admitted in the case, that she was seized at sea, off‘the mouth of the river Amazon. -This admission ought to conclude the party on this point.
In answer- to the second, the warranty in the policy must.-be understood to relate to goods contraband of war, and not as against the laws of Portugal; for it was well understood between the parties, that the voyage insured was a- forced and illicit trade,, contrary to such laws. The contraband' goods mentioned, in the condemnation must have been understood to be so, in reference ■ only to the laws of, Portugal. The ground of the sentence is stated to be, because the captain advisedly, and deliberately precipitated himself into port to trade, and there by subjected himself .to .the penalty, of the law.of' the 18th March, 1605. The opinion of the court therefore ■ is, that a new trial ought .not to be-granted, and that the plaintiff have judgment on, thp-.verdi.ct.'of the jury.
Postea.-to- the- plaintiffs.-

 See Jackson v. Putnam, 1 Caines’ Rep. 358, and note there.

 In Bates v. Grabham,, 2 Salk. 444, a case is cited by Lord XIolt, as decided by Pemberton, Oh. J., that on an insurance .from Archangel to the Downs, and from thence to Leghorn, parol evidence was.admitted to show that it was agreed the voyage should not commence till the .ship came to such a place, and that the policy was avoided according to the terms of the parol agreement. But in Weston v. Emes, 1 Taun.. 117, this case was denied to be law, and the court decided, that parol evidence of what passed at th; time of effecting an insurance, is not admissible to restrain the effect of the policy.
Where the terms of a policy are olear and explicit, the court will not heai any suggestion or proof of mistake; as that an insurance .on freight gen» rally, was intended to .cover freight earned.. Chereot v. Barker, 2 Johns Rep. 346.