## Case No. 6,816.

HUBBARD et al. v. COOLIDGE et al.

[2 Gall. 353.] [1]

Circuit Court, D. Massachusetts. May Term, 1815.

### MARINE INSURANCE—MISREPRESENTATION.

1. If a policy of insurance authorise the ship to stop at a particular port, it is not necessary for the assured to disclose that the ship will call there, although he has information of the fact.

2. The plaintiffs having stated to the underwriters, in answer to some general inquiries, "that they had no knowledge that the ship would call at the Cape, and knew of no motive for calling there," &c.; and no further inquiries being made by the underwriters, this was not a misrepresentation, to avoid the policy.

3. A representation, as to the destination of the ship, if true at the time, and not fraudulently made, does not avoid the policy, although the destination be afterwards changed.

Assumpsit on a special policy of insurance. The policy, reciting that the plaintiffs were jointly interested in the cargo of the ship Monticello, and the defendants in the cargo of the brig Reaper, on a voyage from Calcutta to the United States, and that the parties were of opinion, that the premium required by underwriters was greater that the risk, for the purpose of dividing the risk, stated the agreement as follows: That the plaintiffs should pay to the defendants $1000, if the Reaper should be lost in the said voyage by any of the perils usually expressed in policies of insurance, provided the Monticello should arrive at a port of discharge in the United States; and that the defendants should pay to the plaintiffs the like sum, if the Monticello should be lost in the voyage, by any of the like perils, provided the Reaper should arrive at a port of discharge in the United States. The parties further agreed, that the vessels' stopping at the usual places of refreshment should not be deemed a deviation; nor should either party be liable, if the vessel of the other party should be seized before leaving the anchorage in Calcutta; nor for any partial loss or damage, but only for a total loss, actual or constructive, according to the law of insurance. The declaration alleged a loss by capture, and by perils of the seas. Upon the trial it appeared in evidence, that the plaintiffs, who reside in New York, employed their agent to effect the policy with the defendants and other shippers in Boston, and that policies were finally effected, on the 19th of January, 1813, in the same form, to the aggregate amount of $10,000. During the negotiation, various propositions passed between the parties, and various letters between the plaintiffs and their agent. In the first letter of the plaintiffs (29th December, 1812) to their agent, proposing the insurance, it is stated, that the ship Monticello was to sail from Calcutta in all August, agreeably to a letter of the captain, of the 14th of July; that by information the Reaper was to sail in September or October; that they wished the insurance to be effected with a warranty against a knowledge of war in Calcutta, and permission given for the vessels to stop at the Cape and St. Helena. These instructions and statements were shown to the underwriters. The letter from the captain, of the 14th of July, 1812, after stating the proceedings of the voyage, and the general expectation at Calcutta, that a war had taken place, or would take place, between Great Britain and the United States, and that no insurance, owing to that expectation, could be effected there, proceeds, "Let the insurance be at and from Calcutta to New York, with the privilege of stopping at the Cape and at St. Helena;" and again, "I shall proceed from this directly to New York, the stoppages before alluded to excepted;" and afterwards he adds, "I may not stop at either of the above places, of course there will be a return premium. I shall sail in all August." In another letter of the plaintiffs to their agent (13th of January, 1813) the purport of this letter was stated in answer to some general inquiries made by the request of the underwriters. There was contradictory testimony as to the fact, whether this letter was communicated to the underwriters or not. The Monticello sailed in August from Calcutta, went into the Cape of Good Hope, as it was alleged, in distress, and was there seized as prize of war, and finally, on the 7th of July, 1813, was condemned. Due notice of the loss was given to the underwriters. It was admitted, that the Cape and St. Helena were usual places of refreshment in the voyage. The defence, at the trial, turned on two points: (1) That there was a concealment of the purport of the letter of the 14th of July, material to the risk, inasmuch as it disclosed an intention of stopping at the Cape, by which condemnation would have become almost inevitable. (2) That there was a misrepresentation of material facts and information in the possession of the plaintiffs, which had been called for by the underwriters.

W. Sullivan and Mr. Hubbard, for plaintiffs.

Prescott & Gorham, for defendants.

STORY, Circuit Justice (after summing up the facts, and advising the jury to find a verdict for the plaintiffs on the facts, if they were satisfied that there had been no concealment or misrepresentation), proceeded: If, on the point of concealment, the jury are satisfied, that the substance of the letter of the 14th of July was not communicated to the underwriters, and that it would have materially enhanced the premium, it becomes my duty to declare the law applicable to this point. It is incumbent on

[1] [Reported by John Gallison, Esq.]

the assured to disclose all facts in his possession material to the risk, which are not contained or implied in the policy itself. But he may be innocently silent as to facts, which the policy necessarily imports. If the policy authorized the ship to stop at a particular port, it is not necessary for the assured to disclose, that the ship will call there, although he has information of the fact. The underwriter, in such a case, takes upon himself the chance of her stopping; and he cannot but know, that the permission to stop implies a chance or probability of its being done, and he estimates his risk accordingly. If he want further information, he is bound to ask for it: and if he waive any inquiry, he cannot reasonably complain, that the calling at such port was not estimated in his risk. Suppose, at the present time, a policy from Boston to any port in France; the assured need not disclose to what port he intends sending his ship, although in consequence of the Algerine war, the risk to a port in the Mediterranean might materially enhance the premium, beyond that to a port in the Atlantic Ocean. If the underwriter sign the policy without inquiry, he agrees that the ship may go to any port, which the assured may elect. It would be a different thing, if the assured fraudulently misrepresented the port of destination. Seton v. Low, 1 Johns. Cas. 1.

The present case, however, does not require so strong a principle. The concealment is stated to consist in the non-disclosure of the contents of the letter of the 14th of July. That letter does not disclose a decided intention to call at the Cape or at St. Helena. It merely requires, that the insurance should include a permission to stop at these ports without any absolute determination, one way or the other. It seems to have been a measure of extreme caution, to guard against possible events. As the defendants allowed the permission to stop at these ports, I am entirely satisfied, that the non-disclosure of the letter of the 14th of July was not such a concealment, as could, in point of law, avoid the policy. If, therefore, the concealment be made out, the plaintiffs are, notwithstanding, by law entitled to a verdict on this point.

But it is argued, that the underwriters did call for information, and it was not truly given. The call was very general; and when the answer was given, it was not complained of, as not sufficiently precise and special. If dissatisfied, the underwriters were bound to make further inquiries, and to point out the deficiencies, and not lie by until after a loss, when the assured is no longer able to save himself. General answers are sufficient to general inquiries; and if the underwriters do not insist upon more exact information, they waive the benefit of it; and this applies more strongly in cases, where the questions are not so explicit, as to point to any definite facts. Where the under-writers call for information on a particular point, the assured is bound to answer truly. If he misrepresent a material fact, or give it a false coloring, by design or by accident, it is fatal to the policy. Representations as to the destination of the ship, however, have been thought susceptible of a distinction. It has been held, that such a representation, if not fraudulently made, does not avoid the policy. If true at the time, it is sufficient, although another destination should ultimately be given; for the assured in effect says, this is my present intention or expectation, but I reserve a right by the policy to go to other ports. Bize v. Fletcher, Doug. 271, Park, Ins. 270; Marsh. Ins. bk. 1, p. 459, c. 10, § 2; Vandervoort v. Smith, 2 Caines, 155.

In the present case, there is not the slightest pretence, that the plaintiffs fraudulently misrepresented the destination of the ship. The supposed misrepresentation consists in the plaintiffs' having affirmed, that they had no knowledge, that the ship would call at the Cape, and knew of no motive for calling there, and thought, as rumors of war existed at Calcutta, it would be madness in the captain to call at the Cape; whereas the defendants contend, that the letter of the 14th of July clearly showed an intention to call there. I have already stated what is my construction of that letter. The jury will consider, whether it is possible to give it any other reasonable construction. If that letter was disclosed, there is an end to the defence. If it was not, it seems to me very difficult to maintain, that the plaintiffs have falsely interpreted it.

The jury gave a verdict for the plaintiffs, and found specially, that the letter of the 13th of January, 1813, (which substantially stated the contents of the letter of the 14th of July) was shown to the underwriters.