## HOLMES *vs.* WEED.

The plaintiff, previous to the 23d of November, 1844, had entered into a contract with the postmaster general, for the carrying of the mail, upon a specified route, and had contracted with W. and H., severally, to convey the mail on portions of the said route, and had agreed to pay them therefor, at the same rate that he himself was to receive.   On the said 23d of November, 1844, the plaintiff assigned to the defendant all his interest in the contract with the postmaster general, and paid the defendant $20; whereupon the defendant agreed to convey the mail according to the provisions of the plaintiff's contract with the post office department; to indemnify the plaintiff, and save him harmless from all fines and penalties that had accrued or might accrue for any neglect in carrying the mail upon said route; and to pay to W. and H. for carrying the mail according to their proportion of said route.   W. and H. carried the mail on the said route until the 30th of June, 1845, and were paid in full to the 1st day of April, 1845.   On the 1st day of June, 1845, the plaintiff's contract with the department was surrendered and canceled, and a new one entered into between the postmaster general and the defendant.   Suits were brought by W. and H. against the plaintiff to recover their compensation for carrying the mail for the quarter ending June 30, 1845, and recoveries were had therein, and the judgments were paid by the plaintiff.

*Held*, 1. That W. and H. had each a good cause of action against the plaintiff; the contract between them not having been rescinded, or affected in any way, by the assignment of the contract between the plaintiff and the department, to the defendant, or by the cancelment of that contract and the taking of a new one in the defendant's own name.

2. That the assignment operated to make the defendant the principal in the business, and the plaintiff his surety to W. and H.

3. That the defendant's undertaking must be regarded as an agreement to indemnify the plaintiff, and save him harmless from the claims of W. and H.; and that the plaintiff having been sued by W. and H. and compelled to pay the sums due them, he was entitled to recover the amount from the defendant.

In order to prevent injustice, the law will imply a promise to indemnify, in favor of a surety, against his principal, if none is expressed.

THIS was an appeal by the plaintiff from a judgment entered upon the report of a referee.   The complaint alleged that some time previous to the 23d of November, 1844, the plaintiff had entered into a contract with the postmaster general of the United States, by which the plaintiff had bound himself, for a certain consideration to be paid to him, to convey the United States mail three times a week from Geneseo, in the county of Livingston, to Ellicottville, in the county of Cattaraugus, and

Holmes *v.* Weed.

from Ellicottville to Geneseo; that previous to the said 23d day of November, 1844, the plaintiff had contracted with one Artemas B. Walker, and one Thomas B. Walker, and one Nathan P. Hovey, severally, to carry the said mail, according to the provisions of the said contract, on some portions of the said route from Geneseo to Ellicottville, and had agreed to pay them, severally, for their conveying the said mail, at the same rate that the plaintiff was to receive from the said postmaster general. That on the said 23d day of November, 1844, the plaintiff assigned to the defendant all his interest in the said contract with the postmaster general, and did also pay the said defendant the sum of twenty dollars, and the defendant did thereupon undertake and agree to convey the said mail according to the provisions of the said contract with the postmaster general; and did also further enter into his certain agreement in writing with the plaintiff, of which the following is a copy: " Received of Ira Holmes, twenty dollars, for which I agree to indemnify and save harmless the said Ira Holmes from all fines and penalties that has or hereafter may accrue for any neglect in carrying the mail of the United States from Geneseo to Ellicottville, and back three times a week, and pay to A. B. Walker, one Hovey, and T. B. Walker, for carrying the mail on said route, according to the proportion of the road carried by them from first of October last past, to pay the said Walkers, if they carry the mail. November 23, 1844. (Signed) W. W. WEED." That the said A. B. Walker, Hovey and T. B. Walker, named in the said writing, were the same Artemas B. Walker, Nathan P. Hovey and Thomas B. Walker, before mentioned. That the said Artemas B. Walker, Thomas B. Walker and Nathan P. Hovey did continue, respectively, to convey the mail on portions of the said route, from the first of October, 1844, to the first day of July, 1845, for which the said Artemas B. Walker was entitled to receive the sum of sixty-eight dollars; the said Thomas B. Walker was entitled to receive the sum of ninety dollars; and the said Nathan P. Hovey was entitled to receive the sum of ninety dollars. That the defendant wholly neglected and refused to pay to the said A. B. Walker, T. B. Walker

and N. P. Hovey, respectively, the said several sums, or any part thereof. That they did afterwards, respectively, commence suits in the supreme court against this plaintiff and one Jesse Wadhams to recover the said compensation for conveying the mail, of which the defendant had due notice, and that such proceedings were had therein that afterwards, and on the 20th day of October, 1848, the said Artemas B. Walker recovered against the said plaintiff and Jesse Wadhams the sum of sixty-seven dollars and eighty-three cents damages, and one hundred and eleven dollars and fifty-two cents costs; and the said Thomas B. Walker recovered against the said plaintiff and Jesse Wadhams, at the same time and in the same court, a judgment for the sum of eighty-nine dollars and thirty-eight cents damages, and seventy-four dollars and thirty-one cents costs; and the said Nathan P. Hovey, at the same time and in the same court, recovered against the said plaintiff and Jesse Wadhams eighty-nine dollars and thirty-eight cents damages, and seventy-three dollars and fifty cents costs. That the said several recoveries for damages were for the respective services of the said Artemas B. Walker, Thomas B. Walker and Nathan P. Hovey, in conveying said mail after the first day of October, 1846; and that the said plaintiff in this suit had been compelled to pay and had paid the said several judgments, in all amounting to five hundred and five dollars and ninety-two cents. That in the defense of the said several suits the plaintiff had been subjected to great trouble, loss, costs and expense, in the payment of attorney and counsel fees, and procuring the attendance of witnesses, and in the loss of time in preparing for the trial of the said suits, amounting in all to two hundred and fifty dollars, no part of which several sums of money had been paid to the plaintiff. The plaintiff therefore demanded judgment against the defendant for six hundred and eighty dollars, and interest from the first day of January, 1849, besides his costs.

The referee found the following facts: That the defendant, on the 23d day of November, 1844, executed the written instrument set forth in the plaintiff's complaint; that at the date of the said instrument the plaintiff was a contractor with the United

Holmes *v.* Weed.

States to carry the mail from Geneseo to Ellicottville, three times a week and return, until the 30th day of June, 1845 ; that the plaintiff and one Jesse Wadhams had contracted with Artemas B. Walker, Thomas B. Walker and Nathan P. Hovey, severally, to carry said mail on different portions of said route until the said 30th day of June, 1845, and was to pay the said A. B. Walker fifty-five dollars per quarter, and the said T. B. Walker and N. P. Hovey, each, seventy-two dollars and fifty cents per quarter, for carrying the said mail ; that the said Walkers and the said Hovey carried the mail on the said route until the 30th day of June, 1845, and were paid in full for their services to the first day of April, 1845 ; that on the first day of January, 1845, the contract of the plaintiff with the United States was surrendered and canceled, and a new one entered into between the United States and the defendant ; that after the 30th day of June, 1845, suits were severally commenced by the said Artemas B. Walker, Thomas B. Walker and Nathan P. Hovey against the said plaintiff and Jesse B. Wadhams, to recover *their* compensation for carrying said mail for the quarter ending the 30th day of June, 1845 ; that the defendant, Weed, had no notice of the commencement or pendency of the said suits, or either of them ; that the plaintiffs in said suits severally recovered against the defendants therein, and judgments were severally docketed therein on the 28th day of March, 1849, as follows, viz : in favor of Artemas B. Walker for the sum of sixty-seven dollars and eighty-three cents damages, and one hundred and eleven dollars and fifty-two cents costs ; in favor of Thomas B. Walker for the sum of eighty-nine dollars and thirty-eight cents damages, and seventy-four dollars and thirty-one cents costs ; and in favor of the said Nathan P. Hovey for the sum of eighty-nine dollars and thirty-eight cents damages, and seventy-three dollars and fifty cents costs ; that executions were issued upon said judgments, and that the plaintiff paid the amount thereof to the deputy sheriff of the county of Livingston. The referee's conclusion of law upon the foregoing facts was, that they did not furnish a cause for the plaintiff to recover in this action, and he therefore nonsuited the plaintiff.

HARVARD LAW SCHOOL LIBRARY.

*McNeil Seymour*, for the appellant. I. The report of the referee shows the proof of facts sufficient to entitle the plaintiff to recover judgment against the defendant. (1.) The promise of the defendant is a collateral engagement to pay third persons a debt which should thereafter accrue against the plaintiffs. The promise amounts to an undertaking to indemnify the plaintiffs against such liability. (*Chitty on Contracts*, 488.) Indemnity is a security against loss or *liability*. (*See Burrill's Law Dict.* 609. *Churchill & Hayes* v. *Enoch Hunt*, 3 *Denio*, 321. 1 *Hill*, 56.) (2.) If not an *express* promise of indemnity, the law, from the circumstances and from the agreement, will imply such a promise. (*Chitty on Contracts*, 500, *&c.*) (3.) The undertaking of the defendant shows an agreement to indemnify and save harmless the plaintiff against fines and penalties, and *pay*, that is, discharge the plaintiff from all liability to the Walkers and Hovey for carrying the mail after the date of the agreement ; in other words, to save the plaintiff harmless from any debt that might accrue on the plaintiff's contract with them. This amounts to an indemnity by the common law. (*See Churchill & Hayes* v. *Hunt*, 3 *Denio*, 326.) (4.) There was no privity of contract between the Walkers and Hovey with the defendant, by which his promise to pay could be enforced. (5.) The agreement by which the defendant promised to indemnify the plaintiff against fines and penalties, &c. and pay to the Walkers and Hovey the amount fixed for their carrying the mail, was a continuous one, and both based on the same consideration. (6.) There was a sufficient consideration at the foundation of the agreement. There was the payment by the plaintiff of twenty dollars, which said sum the defendant acknowledged he had received. There was a giving up by him of his contract with the post office department in favor of the defendant, thereby giving to the defendant what benefits might accrue thereon. (7.) Both parties had acted under the agreement, and the defendant cannot now say that he is not bound by it. (8.) The agreement of the defendant is to be carried out in the sense in which the defendant apprehended that the plaintiff understood and received it. (*Chity on Contracts*, 73.) The construction of this contract is

Holmes *v.* Weed.

plain, simple, and susceptible of but one meaning and one interpretation.

II. The report of the referee shows the agreement on the part of the defendant to indemnify the plaintiff, and pay other persons to whom the plaintiff had become or would become liable to pay for carrying the mail. It shows a good and sufficient consideration for the agreement. It shows that the plaintiff relied on the promises set forth in that agreement. It shows that the Walkers and Hovey performed the work of carrying the mail, and that the defendant received the benefits accruing from their labor. It shows that the plaintiff was compelled to pay, and that he alone did pay for said work. The conclusion therefore must be, that the defendant was legally bound (to say nothing of his moral obligation) to pay and reimburse the defendant for the amount paid by him for that labor.

*J. Kershner,* for the defendant.    I. The several suits commenced by the Walkers and Hovey against the plaintiff and Wadhams, and in which judgments were obtained, were based upon contracts made between them and the plaintiff and Wadhams, with which the defendant in this action was in no way connected. If there is any indemnity on the part of the defendant to the plaintiff and Wadhams, the plaintiff cannot maintain an action on it on his own name; but the action should be in the name of Holmes and Wadhams, jointly, as they are jointly interested. The fact that Holmes paid the judgment cannot change the question, as Wadhams is liable over to him for contribution.

II. The instrument declared upon is not an indemnity on the part of the defendant, against any liability on the part of the plaintiff to the Walkers and Hovey, to pay them for carrying the mail; nor does it appear that the defendant knew of any such liability at the time of the execution of the instrument. It is simply an agreement on the part of the defendant to pay Walkers and Hovey for carrying the mail on said route, provided they carried it, which agreement could have been enforced by the persons for whose benefit it was made.

III. The fair construction of the instrument is, that it was made to continue in force only so long as the plaintiff stood in the relation of contractor with the government. When the defendant became the contractor, all liabilities on the part of the plaintiff, for fines and penalties, ceased. And if, after that time, the persons named carried the mail on that route, they carried directly for the defendant, and he was liable to them as for work and labor done and performed for the defendant. It seems to me that it is quite apparent that the object of the instrument in question was to protect the plaintiff and the other persons who should carry the mail on that route, in the interval of time that should elapse between the time of the assignment of the plaintiff's contract and the procuring of a new contract by the defendant. In any point of view the plaintiff did not make out a case, and the decision of the referee, nonsuiting the plaintiff, should be sustained.

*By the Court,* JOHNSON, J.   Upon the facts found by the referee I am clearly of opinion that he erred in his conclusions of law, and that the action was properly brought. The promise upon which the action was founded was in writing, and upon a good consideration upon its face. By the agreement, the defendant undertook with the plaintiff to pay to the two Walkers and Hovey, for carrying the mail over the route, designated in the contract between the plaintiff and the post office department, according to the agreement between the plaintiff and the Walkers and Hovey for performing that service. This contract between the plaintiff and the department had been previously assigned to the defendant by the plaintiff. On the first of January, 1845, as the referee has found, the defendant surrendered the contract thus assigned to the department, and took a new one, in his own name, for carrying the mail over the same route. The contract on the part of the Walkers and Hovey was with the plaintiff and one Wadhams, and by it they bound themselves to carry the mail over specified portions of the route, until the 30th of June next ensuing, for the compensation fixed, which the plaintiff and Wadhams agreed to pay. The Walkers and Hovey

Holmes *v.* Weed.

proceeded and carried the mail according to their agreement until the 30th of June, and received their pay up to the commencement of the last quarter. To recover the stipulated compensation for carrying the mail the last quarter, they brought their actions severally upon their contract, against the plaintiff and Wadhams, and recovered, and the amount of the several judgments was collected or paid by the plaintiff upon the executions issued.

It is clear enough, I think, as the case stands here, that the Walkers and Hovey had each a good cause of action against the plaintiff and Wadhams. The contract between them had not been rescinded or affected in any way by the assignment of the contract between the plaintiff and the department to the defendant, or by the cancelment of that contract and the taking of a new one in the defendant's own name. The Walkers and Hovey were no parties to this arrangement, and they had gone on and performed their agreement. They knew neither parties were privies to the new arrangement, and no fact is found by the referee, nor does any thing appear in the evidence, from which it can be inferred that they ever consented to surrender or cancel their agreement, or that they were ever requested to do so. On the contrary, the agreement on which this action is brought shows that it was contemplated by the defendant that they should go on and perform it. His agreement was to pay if they performed. At all times after the assignment the service was performed for the benefit of the defendant, but the plaintiff was not absolved from his liability to pay. The assignment operated to make the defendant the principal in the business, and the plaintiff his surety, to the Walkers and Hovey. This was clearly the legal position in which the parties to this action stood, in reference to each other, from the moment the assignment was made, and the agreement upon which the action is brought was executed. In this view, the defendant's undertaking must be regarded as an agreement to indemnify the plaintiff and save him harmless from these claims. The law will imply a promise to indemnify, in favor of a surety against his principal, if none is expressed, to prevent injustice.

The plaintiff's right to recover was not affected by his neglect to give the defendant notice of the actions against him. (*Lee* v. *Clark,* 1 *Hill,* 56. *Duffield* v. *Scott,* 3 *T. R.* 374.) Nothing more than the amount actually due the Walkers and Hovey appears to have been recovered by them of the plaintiff, and nothing is shown to raise any suspicion of collusion or unfairness toward the defendant in that litigation.

The defendant was bound to see these persons engaged in his service paid, and not to suffer the plaintiff to be sued. And as he did not, and the plaintiff was sued, he is entitled to recover the amount he was compelled to pay. The judgment of the special term must therefore be reversed, and a new trial ordered, with costs to abide the event.

[Monroe General Term, December 4, 1854. *Johnson, Welles* and *T. R. Strong,* Justices.]