Jarvis *v.* Sewall.

[ONONDAGA GENERAL TERM, December 22, 1863.   *Allen, Mullin, Morgan* and *Bacon*, Justices.]

---

## JARVIS *vs.* SEWALL and others.

The condition of an indemnity bond, given by the defendants to A. and M. to secure them for becoming sureties for S. and S. on appeal from the executive council or court of appeal, in Canada, to the queen in privy council, was that the obligors would pay to A. and M. the "taxable costs" which they might *incur and become bound to pay* by reason of having executed the appeal bond; with a proviso that S. and S. should allow and permit the defendants to "control and compromise" said suit when they should deem it advisable to do so.   In an action upon the bond of indemnity; *Held*

1. That the plaintiff was not required to aver that the defendants were allowed to control the suit; that the proviso was not a condition precedent, but a proviso or defeasance, which it devolved upon the defendants to set up by answer and maintain by proof, to avoid their liability.

2. That the bond of A. and M. having been given at the request of the defendants, as was expressly recited in their own bond, they could not be heard to object either that it was not valid by the law of Canada, or to insist that the plaintiff should prove its validity; they being estopped from questioning it.

3. That no proof that A. and M. had *paid* any part of the costs incurred on the appeal was necessary.   That the obligation of the bond of indemnity attached upon the obligors incurring or "becoming bound," to pay the costs; and they became bound upon the affirmance of the judgment appealed from, and the judgment for costs therein rendered, and still more was their liability fixed when a judgment for such costs had been obtained against them.

4. That by the "control" of the suit, mentioned in the proviso of the indemnity bond, a control for the purpose of effecting a *compromise*, only, was intended; and that a request of the defendants, made to S. and S. to discontinue the suit, was not an attempt to control and compromise it, within the meaning of such proviso; nor was the omission of S. and S. to comply with such request a denial of the control provided for in the bond.

5. That the appellate tribunal having affirmed the judgment, and awarded the costs of the appeal, to the respondents, and inserted the sum total in the final order, the sum thus inserted was to be assumed to be the taxable costs of the appeal, within the meaning of the condition for the payment of the "taxable costs;" and if taxation was necessary, the record was conclusive of the amount, and could not be impeached or questioned.

6. That the defendants having been informed of the result of the appeal to the queen in privy council, and requested to pay their bond, no other demand of such costs was necessary before suit brought upon the bond of indemnity. MULLIN, J. dissented.

Mode of proving a judgment or decree of the privy council in England, made on appeal from a decision of the executive council or court of appeal in Canada.

Where a judgment is imperfectly proved, on the trial at the circuit, the party may produce, on the argument of an appeal, and leave with the court, a record of the judgment, properly authenticated to make it competent evidence.

APPEAL from a judgment entered at a special term after a trial at the circuit. The action was on an indemnity bond, dated December 27th, 1847, given by the defendants to Arnold and Mair, to secure them for becoming sureties for Smith and Smith, on the appeal from the Canada court of appeal to the queen in privy council, of the suit of Smith and Smith against Simpson and others. The plaintiff is the assignee of this bond. Prior to 1847 the Smiths had brought an action in court of chancery of Canada, against Simpson and others, and succeeded. Simpson appealed to the Canada court of appeal, and that court reversed the judgment. Smith then appealed to the queen in privy council, in England, and Arnold and Mair gave their bond to Simpson and others, to secure the costs of the appeal. The condition of the Sewall bond was, that they would pay to Arnold and Mair the taxable costs which they might incur and become bound to pay by reason of having executed the appeal bond, with the pro-

Jarvis *v.* Sewall.

viso, however, that the Smiths should allow and permit the Sewalls to "control aad compromise" the suit, when they should deem it advisable to do so.

Judgment was entered in favor of the plaintiff, upon the findings of fact by the judge, for $3484.98 damages, and the costs; and the defendants appealed.

*J. F. Starbuck,* for the appellants.

*John Clarke,* for the respondent.

BACON, J. To appreciate properly the position of these parties, and the questions which arose upon the trial, it will be expedient briefly to recapitulate the facts of the case. They are substantially these: Prior to the year 1847, Terence Smith and Henry G. Smith had prosecuted a suit against Simpson and others, in the court of chancery of Upper Canada. The object of that suit was to enable them to redeem a valuable tract of real estate. They succeeded in the first instance, and a decree in their favor was made by the vice chancellor. From this judgment the defendants Simpson and others appealed to the executive council or court of appeal in Canada, and by that court the judgment of the vice chancellor was reversed. The Smiths, dissatisfied with this result, prepared to take a further and final appeal to the privy council of Great Britain. To effect this it was necessary to give a bond, and Arnold and Mair became their sureties, in a bond the condition of which was that they should pay all such costs as should be awarded by the privy council to such person or persons as should be entitled to receive the same. As an indemnity to Arnold and Mair for thus becoming sureties for the Smiths, the defendants in this suit executed their bond to said Arnold and Mair. What particular inducement led them to give this bond does not appear, save that they were especially friendly to the Smiths, and believed they had a just claim, and it is probable, as Smith in his testimony

states, that the expectation of the parties was in case of final success, that a handsome remuneration was to be made to them. The bond of the defendants recites among other things that Arnold and Mair became sureties in the appeal bond at the request of the defendants in this suit. The condition of the defendants' bond was that they should pay to Arnold and Mair, or their assigns, the taxable costs which they might incur, or *become bound to pay,* by reason of having executed the appeal bond, and the costs and expenses they might be subjected to in the collection of such costs; and there was a further condition or proviso, that the bond should become void if the Smiths should allow and permit the defendants "to control and compromise" the suit thus pending and about to be appealed, when they should deem it advisable to do so.

The appeal was duly taken and prosecuted before the queen in privy council, and by that tribunal the judgment of the court in Canada was affirmed, and the privy council among other things directed that the appellants should pay to the respondents the sum of £411 11s 10d, for the costs of the appeal, and this was made a part of the judgment of the court. Subsequently to this the bond of Arnold and Mair was prosecuted in the court of common pleas in Canada, and judgment obtained against Arnold and the representatives of Mair, for the penalty of the said bond. The plaintiff in this action became the assignee of the defendants' bond of indemnity, and brings this suit, seeking to recover therein the amount for which Arnold and Mair became liable upon the appeal bond, given as hereinbefore mentioned.

The answer of the defendants admits the execution of the bond described in the complaint, and that they were informed that the appeal had been dismissed, and that they were requested to, but did not pay the costs, referred to in the complaint, and ignores the remaining allegations therein. They then set up as a substantial defense that they were not permitted to control and compromise the suit when they deemed it advisable to do so, and they aver, that in November, 1848,

Jarvis *v.* Sewall.

they directed the suit to be discontinued, and so informed Terence Smith, who had the entire management of the same, and were not permitted to control the appeal, and afterwards the same was prosecuted and costs incurred.   There is a still further defense to the effect that Arnold and Mair had been secured for their liability by the Smiths, and had received payment for all they had been obliged to pay, but no proof was offered on the trial to sustain this answer, and no further notice need be taken of this defense.

Upon the trial a variety of objections were taken to the plaintiff's right of recovery, and the case bristles with exceptions on almost every page.   They are creditable to the industry and ingenuity of the defendants' counsel, but it will not be necessary to consider at length any more than he has deemed it proper to present in his printed points and oral argument.   Without arguing he has called our attention, as if he deemed them worthy of notice, to three or four objections to the right of recovery, under his fourth point.   They may be very briefly disposed of.   The first, that it was incumbent on the plaintiff to show affirmatively, that the Sewalls were allowed to control and compromise the suit, was originally urged on the argument of the demurrer, and it is only necessary to affirm the decision then made that this is not a condition precedent, but a proviso or defeasance, which it devolved upon the defendants to set up by answer (as in fact they have done in this case) and maintain by proof.   The judge on the trial rightly held this to be the law of the case.

In regard to the second, that the bond of Arnold and Mair being given in a judicial proceeding, there was no evidence that the law of Canada recognizes such an instrument, it is, I apprehend, enough to say that the bond having been given by the request of the defendants, as is expressly recited in their own bond, they cannot be heard to object either that it is not valid by the law of Canada, or to insist that the plaintiff shall prove its validity.   They are estopped from questioning it.

Jarvis *v.* Sewall.

The third objection is answered in part by the same considerations applicable to the second, but seems to be effectually disposed of by the testimony of Terence Smith, that on the appeal to the privy council the appellants gave a bond to the respondents, and that Arnold and Mair were the sureties therein, and that the bond of the defendants was given to Arnold and Mair expressly to indemnify them for becoming such sureties. The last objection under this head is that there is no proof that Arnold and Mair, or their representatives, ever paid any part of the costs incurred on the appeal. No such proof was required to be made. The obligation of the defendants' bond, by its very terms, attached upon the obligees Arnold and Mair, incurring or "becoming bound" to pay the costs, and they became bound upon the affirmance of the judgment from which the appeal was taken, and the judgment for costs therein rendered, and still more was their liability fixed when a judgment for those costs had been obtained against them. So it was held in the decision on the demurrer, and such is the clear and unquestioned language of the authorities. (*See Thomas* v. *Allen*, 1 *Hill*, 145; *Chace* v. *Hinman*, 8 *Wend.* 452; *Gilbert* v. *Wiman*, 1 *Comst.* 550.)

We will now consider the three more specific and formidable objections, upon which the defendants' counsel relies to reverse this judgment and obtain a new trial.

I. Upon the trial, in order to prove the decree of the privy council made upon the appeal, the plaintiff offered in evidence and the court received under objection, a sworn copy of a document filed in the office of the registrar of the court of chancery of Canada, at Toronto. The witness who produced it testified that he compared it with the original in the registrar's office, and that it was a true copy. The official certificate of the registrar was that it was a correct copy of a document filed in his office, and he attached to it the seal of the court of chancery of Canada. The witness further testified that the privy council was not a court of record; that he thought they had a clerk, but did not know that they used a

Jarvis *v.* Sewall.

seal; and thought the document in the registrar's office had no seal. The objection of the defendants' counsel is that the original decree was probably in London, with the clerk there; that there was no evidence where the document in the registrar's office came from, and that at most it was but a copy of a copy, and therefore clearly inadmissible.

I am not prepared to say that the document presented was sufficiently proved to entitle it to be received in evidence. But the counsel for the plaintiff has produced on the argument and left with the court, what it is now insisted is a record of the judgment of the privy council, authenticated in all respects to make it competent evidence of the facts it purports to prove. This is in accordance with a well established rule that permits record evidence imperfectly proved on the trial, to be exhibited on the argument, since if all that was defective is now supplied, it would be idle to send the cause back for a new trial upon an exception no longer tenable. This has been repeatedly held in respect to records of judgment, exemplification of bankrupt discharges, &c. (*Burt* v. *Place,* 4 *Wend.* 591. *Ritchie* v. *Putnam,* 13 *id.* 524. *Dresser* v. *Brooks,* 3 *Barb.* 429.)

Before examining the document now presented, it may be well to say a few words concerning the court of privy council, its constitution and special functions. It is a court in which the sovereign of Great Britain presides, and it is composed of the high officers of state, embracing the members of the privy council, strictly so called, the lord high chancellor of England, and certain other functionaries, who together compose what is called the "judicial committee of the privy council." It is a court of appeals from judgments rendered in the colonial courts, and is a tribunal of appeals solely, having no original jurisdiction, and having no appropriate machinery of its own to execute its decrees. In this respect it is analogous to our own court of appeals. It has power to award costs, and determine who shall pay them, and to direct the manner in which its judgments in all respects shall be en-

Jarvis *v.* Sewall.

forced, which it is presumed is ordinarily done by sending down a record or remittitur to the court from which the appeal was taken, to proceed in the cause, or to execute its judgment, when such a proceeding is necessary. It has no seal, neither has it any clerk, as the witness Jarvis supposed it might have. The only officer having any functions analogous to that of the clerk of an ordinary court, is an officer called the registrar, who has the powers and exercises the duties of both an examiner and master in chancery, and such others as his majesty, under his sign manual, may appoint. When an appeal comes before this court, it is referred to the judicial committee, who hear the case and make a report or recommendation upon which the sovereign makes his decision, and that becomes the judgment of the court of privy council. (*See Evans' Collection of the Statutes, vol. 9, p. 611 et seq.*)

We now have presented to us what purports to be a full record of the doings of the privy council, at a court held at Buckingham Palace on the 13th day of June, 1850, comprising the report of the judicial committee in the matter of the appeal of Terence Smith and Henry G. Smith from the judgment of the executive council or court of appeal of Upper Canada, ending with a recommendation that the judgment be affirmed, and the appeal dismissed, and a direction that the appellant pay to the respondent the sum of £428 11s. 10d. sterling, for the costs of the appeal, and concluding with the approval of her majesty the queen of England, by and with the advice of her privy council, and an injunction to the governor general of Canada, " and all other persons whom it may concern to take notice thereof and govern themselves accordingly." In addition to this is an order made by the court of chancery in Canada, in the suit of Smiths against Simpson and others, in November, 1850, directing the bond of Arnold and Mair, given on the appeal to the privy council to be delivered up to the obligees therein, for prosecution.

These documents are exemplified under the seal of the court of chancery in Canada, and the certificate of Alexander

Grant, styling himself registrar of said court, setting forth that he had compared the annexed copy of the decree of the privy council " *with the original on file in his office,*" and also the copy of the order of the court of chancery on record in his office, and that they are correct transcripts thereof, and of the whole of said original records.　To this is appended a certificate of Philip Michael Mathew Scott Van Koughnet, chancellor of the court of chancery of Upper Canada, and presiding magistrate thereof, certifying that Alexander Grant, whose name was subscribed to the foregoing attestation or certificate was the registrar of said court, in whose custody such records are required to be kept, and that his signature is genuine.　To this succeeds the certificate of Adam Johnston Ferguson Blair, describing himself as secretary of the province of Canada, and having the custody of the great seal, certifying to the constitution, and nature of the jurisdiction of the court of chancery, to the genuineness of the signature of Alexander Grant, and that as registrar of said court, he has the custody of the papers and records of which copies are annexed, (being the same papers certified to by the said registrar,) and that Van Koughnet is chancellor and presiding magistrate of the court, and his signature is genuine.　This is attested by what purports to be the great seal of the province of Canada; and the whole winds up with the certificate of Viscount Monck, governor general of British North America, &c., that Blair is secretary, and this is attested by his signature and seal of office.

All this, with some supererogation indeed, makes all the proof required by our statute, (3 *R. S. 5th ed.* 678, § 26,) to entitle the documents now produced to be read in evidence. It appears sufficiently by the testimony and certificates, and on the face of the papers, that the document certified as the ·doings of the court of privy council, is the original record sent over to and filed with the registrar of the court of chancery in Canada.　It is a record filed in his office, and of which he is the proper and legal custodian, and is complete and

perfect without any further action of the court of chancery to give it validity, and contains a final judgment upon the appeal. It is certified in all respects as required by our statute, and is consequently admissible in evidence, and when admitted imports absolute verity. The objections taken upon the trial being now obviated, and the proof supplied, there is no need consequently of sending the case back for a new trial on this exception.

II. The defendants' counsel insists that the third defense was maintained, and that the court should have found that the defendants attempted to control and settle the suit pending the appeal, and were prevented from so doing by the Smiths; and that this operated to discharge them from the obligation of the bond. The language of the proviso is peculiar: it is that they (the Sewalls) should be allowed " to control and compromise" the suit " when they should deem it advisable to do so." If I were called upon now to give a construction to this language, and get at the probable intent of the parties, I think the more natural interpretation of the bond would be that the " control" the Sewalls were to be permitted to exercise would be one for the purpose of effecting a compromise, should one be offered or appear to be advisable in the progress of the suit. It would seem to be very unlikely that they were to have the power at any moment, and in any stage of the suit, to step in and by putting an end to the suit, without terms, conditions or qualifications, to deprive the Smiths, for whose special benefit they executed this bond, of the power of proceeding one step in their appeal, and compelling them to lose all the prospective benefits of the litigation. Yet this is the construction contended for by the defendants' counsel, in effect. If however we concede this for the purposes of this trial, the proof comes far short of establishing the attempted defense. The utmost that Sewall proves is that when Terence Smith was on his way to England to prosecute the appeal which had then been taken, he (Sewall) requested him not to go on with the appeal, that

Jarvis *v.* Sewall.

he supposed the thing had come to an end, and wanted him to discontinue the suit. Upon Smith's declining and expressing a determination to proceed, he merely repeated his request, but gave no order, direction or prohibition in the matter, and actually loaned Smith money to aid him in his passage to England. The testimony of Smith, who was examined on behalf of the defendants, is still less explicit, and shows clearly that no direction whatever was given by any of the defendants at any time to have the suit discontinued, nor did they attempt to exercise any control thereof. The utmost that Sewall did was the expression of a wish that the matter might drop; but as the witness says he seemed to have no objection to the Smiths going on if they could do so without relying on the defendants "for any further assistance." Upon this subject the court, after finding the facts, draws the legal conclusion that the request to the Smiths to discontinue the suit was not an attempt to control and compromise it, within the meaning of the condition of the bond, and that they were not denied such control as provided for in the bond. This conclusion is in all its aspects, and conceding the largest interpretation to the proviso that can be claimed for it, in my opinion entirely sound, and disposes of the exception taken on the trial, on this branch of the case.

III. It is finally insisted that there is no evidence in the case of what were the "taxable costs" of the appeal, and no proof of any demand of the defendants for payment prior to the bringing of the suit. I am strongly inclined to think, and if it were essential, to hold, that no demand was necessary. The obligation of the defendant was to pay absolutely the taxable costs Arnold & Mair should incur or become bound to pay, by reason of their bond, and the moment this obligation attached to Arnold & Mair, which it did when the decree of the privy council ordered the costs to be paid, the liability of the defendants attached to them, and they were bound to pay without demand. But if a demand was necessary, it was enough that the defendants were called upon to pay their

bond, and this the answer admits, and that they did not pay the costs referred to and demanded in the complaint.

The costs imposed by the decree of the privy council are to be assumed to be the taxable costs of the appeal. If taxation was necessary (and this, by the way, the registrar of the privy council was by the act constituting that court authorized to do) the record is conclusive of the amount, and can no more be impeached or questioned than any other part of the judgment. If otherwise, the record of a judgment for costs might in every instance be overhauled and an inquiry entertained as to the propriety of the items allowed on taxation. I think there is nothing in this objection, and my conclusion upon the whole case, is that the judgment is right and should be affirmed.

ALLEN, J. The objection taken that the action was premature for the want of a precedent demand of performance, is not tenable, for the reason that the answer admits that the defendants were informed of the result of the appeal to the queen in privy council, and were requested to pay their bond, and there is no objection to the sufficiency of the demand, or want of precision as to the amount demanded. A point is made upon the term " taxable costs " in the condition of the bond upon which this action is brought. The taxing of costs is simply ascertaining in the mode prescribed by law, or by the court in which the costs are to be taxed, the amount justly payable as and for costs, *inter partes*, in the particular action or proceeding. The adjustment and allowance of the particular sum adjudged is as much the act of the court pronouncing the judgment as is the award of costs, notwithstanding the court may by its officers ascertain the particular items which go to make up the sum total. Here the appellate tribunal awards the costs, and has inserted the sum total in the final order, and the sum thus inserted is the amount of the taxable and taxed costs. The amount was definitively

Jarvis *v.* Sewall.

fixed by the order, and that amount was made up of and constituted the "taxable costs." A judgment in a court of law, ordinarily, distinguishes between the damages and costs, the latter being inserted in the roll after being regularly taxed by the proper officer; but the record is evidence of the amount, without producing the bill of costs as taxed. The defendant's bond recites the bond given upon the appeal, and to indemnify against which the bond in suit was given, as conditioned to pay such costs as should be awarded by her majesty in privy council; and the condition to pay the "taxable costs" must be construed and held to refer to the costs named in the bond thus recited. The obligors having given a bond for the payment of costs to be awarded by the queen in privy council, did not take a bond of indemnity conditioned for the payment of costs to be awarded by any other tribunal, or to any other amount, or to be modified by any other taxation.

*Second.* There is no force in the objection that the appellants were not allowed or permitted to "control and compromise said suit." It was clearly a control for the purpose of a compromise, and for no other purpose, that was contemplated. The obligees never exacted and received a bond of indemnity against their bond for the prosecution of the appeal, with a proviso permitting their indemnitors to stop and dismiss the appeal the next day and thus relieve themselves from all responsibility. The connection of the words also shows that a compromise was thought possible, if not probable, and the object of the clause was to give the defendants, as liable over to the sureties on the appeal, power to compel a compromise whenever one should be attainable. They never had the opportunity of compromising, nor asked permission to do so. They were not to control the appeal and dismiss it at their pleasure, or direct its prosecution as to time or manner or any other thing, but were to be at liberty to "control and compromise the suit."

*Third.* The only remaining objections to the recovery relate

Jarvis *v.* Sewall.

to the documentary evidence. Some of the technical objections have been obviated by the production upon the argument of this appeal of an exemplification in proper form from the court of chancery in Canada of the order or judgment upon the appeal, as an original document on file in that court. It is claimed that the paper is but a transcript of the judgment entered in the appellate court, and can only be proved by an exemplification from that court. One witness testified that the privy council was not a court of record, and its original judgments or orders were transmitted to the colonial court from which the appeal was taken, and were not enrolled or made matter of record in England. If this is so, then the document is properly authenticated as produced on the argument at bar, and there was no evidence in conflict with this statement. I do not deem it important to inquire whether the appellate tribunal is technically a court of record and within the ordinary rules of evidence as to the inspection and authentication of its proceedings. Judicial functions are exercised upon appeal in plantation causes and formerly in admiralty causes, which are regarded as a special power of the royal prerogative, by the queen in council. It is in fact a court of justice, and the council must consist of at least three privy councillors. The appeal is not to the privy council, but to the queen's majesty in council, and the judgments and orders are the acts of the queen, who has the aid and advice of her council. The queen, and not the council, pronounces the judgment. It is called the "Court of Privy Council," but in all the proceedings, as well the appeal as all the subsequent proceedings and orders, it is called "The Queen in Privy Council," and her majesty, by and with the advice of the council, makes the decree, and directs the judgment. (1 *Black. Com.* 231.)

Courts of justice are, as defined by Lord Coke, places where justice is administered by judges who derive their power from the king. In all the king's courts he is supposed, in contem-

plation of law, to be personally present, but is in fact represented by his judges, whose power is only an emanation of the royal prerogative. (3 *Thomas's Coke*, 322, *n. a.* 3 *Black. Com.* 25.) Here the queen is present in person, and the judicial committee of the privy council only act as her advisers, and her majesty exercises in person the royal prerogative. Courts of record are said to be such as have the power to fine and imprison, and this is certainly one common law test of a court of record. (*Thomas's Coke, supra.* 3 *Bouv. Inst.* 68.) It is said in a note to Blackstone that the court of privy council cannot decree *in personam*, in England, unless in certain criminal matters. (1 *Black. Com.* 232, *note* 4.) But whatever may be the precise extent or character of the jurisdiction, it cannot, I think, be doubted that a court in which the queen presides and administers justice, is a court of record.

The appeal to the king in council is given by an act of the colonial legislature of Canada, passed July 9, 1794. (*Laws of Canada, ed. of* 1831, *p.* 51.) This appeal was brought and the security given in conformity to the provisions of that act. Whether the history and practice of the tribunal known as " The king (or queen) in privy council," contemplates a formal judgment to be perfected and enrolled in any of her majesty's offices in England, I do not know. It would seem that the character of the jurisdiction, so far as the same relates to the colonies, is such as to exclude the idea that such judgment or decree can thus be perfected and enrolled. Certainly no execution can follow the judgment, and it must act rather upon the colonial tribunals than upon the parties. Hence, when the final order is made, the proceedings, with the order attested by the signature of the proper officer, are remitted to the colonial court for the government of the judges of that court and all concerned. Neither is it of the character of a patent, which issues from the privy seal. It is rather a mandate, or missive from the queen to her colonial judges which, in virtue of her prerogative, she may within the limit-

ations of law, issue, and which they are bound to obey. And as they are supposed and bound to know the form and manner, as well as the authenticity, of the attestation of a document received by them and placed upon the records of the colonial court as the order or decree of the queen in privy council, it becomes a part of the records of that court, and of the proceedings in the cause to which it relates, and may be exemplified by the proper officer having their custody. Whether the certificate imports absolute verity, so that the genuineness of the document purporting to be from the queen cannot be controverted, need not be considered. It is certainly *prima facie* evidence in any court and jurisdiction in which it becomes material. Without some proof that there is better evidence of the judgment of the queen, the record produced upon this appeal is competent.

It may be added that recent English statutes dispense with a seal on certain exemplifications, and if the decrees and remittiturs of the queen's council are within the statutes, then the judgment was properly certified to the court in Canada.

In *Vandervoort* v. *Smith*, (2 *Caines*, 155,) there was no evidence that the officer certifying to the proceedings sought to be proved had the official custody of such proceedings. In *Wilson* v. *Conine*, (2 *John.* 280,) neither the decree sought to be proved, nor a copy, was produced from any custody. It was sought to be established by a recital in another decree. There was some evidence here that the evidence produced was the best and only evidence that could be had, and that there was no record of the proceedings and order of the queen in any office in England, and that there was no seal of that tribunal by which documents were or could be attested.

The record of the recovery against the sureties on the appeal, in the Canada court of common pleas, was competent evidence against the defendants here. It established the liability of the plaintiff's assignors, and the extent and amount of that liability. (*Candee* v. *Lord*, 2 *N. Y. Rep.* 269. *Ra-*

---

*pelye* v. *Prince,* 4 *Hill,* 119. *Lee* v. *Clark,* 1 *id.* 56. *Holmes* v. *Weed,* 19 *Barb.* 128. *Chace* v. *Hinman,* 8 *Wend.* 452.)

There is no complaint of the amount of the recovery, and the judgment must be affirmed.

MULLIN, J. dissented.

Judgment affirmed.

[ONONDAGA GENERAL TERM, December 22, 1863. *Allen, Morgan, Mullin* and *Bacon,* Justices.]