By the Court.—Speir, J.
When the testimony was closed, plaintiffs’ counsel moved the court that as it then appeared that the sheriff had returned an execution on March 3, 1873, wholly unsatisfied, on the judgment on which the sheriff made the levy, that such return released the levy and disabled the sheriff from claiming a return to him of the property ; and he not being entitled to a return, the plaintiffs are entitled to a direction from the court that the jury find a verdict for the plaintiffs. The motion was denied, and the plaintiffs excepted. If the plaintiffs’ motion should have been granted, it would be an end of the case. This proposition will be first examined.
This suit was commenced May 29, 1873, and the return on the execution was made nearly a year thereafter. The objection could not have availed the plaintiffs at the time of the levy or before the return and while it remained in the sheriff’s hands. The return, *75 therefore, of the writ was a matter between the plaintiffs in the execution and the sheriff. It in no way affected the rights of the plaintiffs. It could be no defense to the sheriff in a suit by the plaintiff in execution. Here it has none of the elements of estoppel as it regards these plaintiffs. The return was subsequent to the commencement of the suit, and if the strict rule is invoked to shut out subsequent proceedings, it would seem, by parity of reasoning, that the same stringent rule would limit the plaintiffs’ recovery to the condition of things at the commencement of the suit.
The return of the writ is conclusive in that suit; and generally the sheriff is concluded by his own return until amended (Watson on Sheriff, 72 ; 1 Ld. Raym. 184). But this rule should be confined to cases where the party against whom it is sought to be impeached collaterally derives some interest from or under it; otherwise there is no reason for shutting out the truth of the matter. There can be no pretense that the plaintiffs had done or omitted to do anything by reason of the return. The issue on the merits was framed long before the return, and a technical estoppel is interposed from subsequent proceedings which had no existence when that issue was joined. I am of the opinion that this is a sufficient answer to the motion, and that the return created no such estoppel.
In addition, and for greater certainty, the defendant’s counsel procured and produced on this appeal the record evidence showing that the sheriff had corrected and amended his return mine pro tunc. The rule seems to be well settled that record evidence may be admitted on an appeal to avoid technical defects. It is, however, subject to the qualification that the evidence shall be such as cannot be controverted. In Bank of Charleston v. Emeric, 2 Sandf. 718, Oakley, Ch. J., says, “It is a well settled and useful practice in res *76 pect of documents which speak for themselves, and on which no questions can arise except such as are apparent on their face, to permit them to be produced on the argument, when they have been inadvertently or unadvisedly omitted on the trial.” The objection against the revival of the writ goes to the power of the court. The doctrine is too familiar for repetition that the court has the completest jurisdiction over its records. It had the power to do what was done here—to authorize the correction of the return, to give life and vigor to the process by erasing the return of “ no property real or personal.” The plaintiffs were not entitled to notice of the motion to correct or revive. They had no legal interest in the question. They must be looked upon in this connection as trespassers committing the wrong prior to the return of the execution. They' acquired no rights founded on the faith of the return; nor, strictly speaking, did they lose any by the revival of the process (Jarvis v. Sewall, 40 Barb. 449 ; Barker v. Binninger, 14 N. Y. 270). This last case is in all respects an authority directly in point.
The charge of the learned judge is predicated on the fact, that the evidence had not shown an actual and continued change of possession, which, under the statute, rendered the sale presumptively fraudulent, and threw on the plaintiffs the burden of proof to show it was in good faith and without intent to defraud creditors. If there was no such change of possession as the statute required, then the presumption of fraudulent intent created by the statute must be removed by the party claiming under the sale proving that the transaction was in good faith and without any intention to defraud; and although the question of intent arising in the case is one of fact for the jury to try, yet the plaintiffs claiming under the sale must not only prove that it was in good faith but that it was without any such intent to defraud creditors. From the facts in *77 the case I think the court was clearly right in its view that there was no such change of possession as the statute required. The facts in this respect, when fairly stated, are as follows:
The goods in question were in the restaurant corner of Hall place and Seventh street. William H. Lane had for years carried on the business there, and had associated with him in such business his son, Albert S. Lane. When Douglas got his bill of sale on January 10, 1873, no delivery, actual or in form, took place. Five days after-wards, when the bill of sale was made to Burnham, the attorney who drew the papers handed the keys to Burnham telling him he thereby put him in possession, and then went through the same formality with Douglas. Douglas went, for the time being, behind the counter, and commenced receiving checks from the customers who were eating their meals there. Burn-ham continued his business as a real estate broker, and was at the place once a week. Douglas was at the time connected with the Department of Public Works, engaged in his duties from 8 A. M. to 5 p. m., got his breakfast at the restaurant, and had done so for fifteen years, he took his breakfast from 6 to 7 a. m. and dinner from 6 to 7 p. m. In the evenings he attended to the business. During his absence the business was entirely attended to by William H. or Albert S. Lane or both, and William only left when he got there. Before January, 1873, Douglas had gone behind the counter and taken money for checks at the request of Lane; he would be there rainy days and all day on Sunday. After the alleged sale, William H. Lane remained there and attended except when detained by sickness ; lived just across the street; when in there, he went about the saloon as usual, and sometimes went behind the counter. No change took place, so far as Albert S. Lane was concerned; he had full charge to run the place, and did so with his father, William H. Lane. *78 No evidence of a change of sign, and the two Lanes were in possession when the sheriff' made his levy.
This court has put a very plain construction on this statute as to change of possession: “an actual change of possession of the goods sold, in the statute of frauds, means an open, visible and public change, manifested by such outward signs, as render it evident that the possession of the owner as such has wholly ceased ” (Randall v. Parker, 3 Sandf. Sup'r. Ct. 60). It is important to bear in mind this construction put upon the statute in disposing of the several refusals and requests to charge. The court decided, and rightly, I think, that the facts disclosed by the evidence threw the burden upon the plaintiffs to show affirmatively the entire good faith of the transaction, and an honest intent not to defraud creditors. The language of the charge is, “the burden rests upon the plaintiff to prove that the sale or transfer was made in good faith and without any intent to defraud such creditors, and if he has failed in that proof he cannot recover.” The learned counsel for the plaintiffs appears to have assumed that the evidence of a change of possession was clear and uncontradicted, and that the court should have directed a verdict for the plaintiff. In support of this assumption, he refers to the fact that Douglas, immediately after the delivery of the bills of sale, went behind the counter and received the checks from the customers, and that this was an open act of possession. As to this it is only necessary to refer to the whole conduct of Douglas. While he did this only at the time being to satisfy himself of the propriety of entering upon his possession, he actually continued his own business during the whole day, taking his meals early and late at the restaurant, as he had done for several years, and coming to the restaurant on rainy days and Sundays, attending to business generally. He put Albert S. Lane as manager to attend to the business, *79 which he did in the same manner and under the same circumstances under which he had performed it before the sale/ This clearly was not an open, visible and public change manifested by such outward signs as render it evident that the possession of the owner had wholly ceased. It seems to me, that all the circumstances attending the sale are calculated to excite suspicion in the minds of sensible business men accustomed to the every-day fair transactions relating to the purchase and sale of property of this description. There were no schedules of the property; no outward change of sign, and nothing to notify the public that the establishment had undergone any change as to the ownership.
The objection is made and exception taken to the eleventh request to charge, that if the circumstances attending the alleged sale were such as would have put a man of ordinary prudence to make inquiries, and such inquiry would have shown reasonable ground for believing that the sale was being made for the purpose of hindering, delaying or defrauding creditors of Lane, then the transaction was fraudulent in law, and the plaintiff cannot recover. This is a case of constructive notice, which, under the circumstances the law, and not the judge, charges the party with. The rule is laid down by Selden, in 15 N. Y. (Williamson v. Brown, 362), that when a purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase he is presumed to have made the inquiry, and ascertained the extent of such prior right or to have been guilty of a degree of negligence fatal to the claim to be considered a dona fide purchaser. This rule is affirmed in Baker v. Bliss, 39 N. Y. 70.
I have examined the several exceptions taken to the rulings on the admission and exclusion of testimony, and am unable to detect any serious errors in them. *80 If the views of the court on the question of an actual and continued change of possession and intention of the parties are correct, then the several requests and refusals to charge need not be further noticed. They are all supported by qualifications, the necessary result of the views entertained by the court on the trial.
The judgment must be affirmed with costs.
Curtis, Ch. J., concurred.