02-11-334-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00334-CV

 

 


 
 
 New
 Hampshire Insurance Company
  
  
 v.
  
  
 Magellan
 Reinsurance Co. Ltd.
 
 
 §
  
 §
  
 §
  
 §
  
  
 
 
 From the 17th District Court
  
 of
 Tarrant County (17-250215-10)
  
 January
 10, 2013
  
 Opinion
 by Justice Dauphinot
 
 


 

JUDGMENT

 

This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s final order on New Hampshire Insurance Company’s
motion for nonrecognition of foreign judgment.  It is ordered that the order of
the trial court is affirmed.

          It
is further ordered that Appellant New Hampshire Insurance Company shall pay all
of the costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS 

 

 

By_________________________________

   
Justice Lee Ann Dauphinot

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00334-CV

 

 


 
 
 New Hampshire Insurance Company
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Magellan Reinsurance Co. Ltd.
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 17th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

New
Hampshire Insurance Company (NHIC) appeals from the trial court’s order denying
its motion for nonrecognition of foreign country judgments against it, which
was filed for recognition by Appellee Magellan Reinsurance Co. Ltd.  NHIC
challenges the order in three issues, each asserting Magellan’s noncompliance
with the requirements for recognition of foreign country judgments under the Uniform
Foreign Country Money-Judgment Recognition Act (the Act).[2] 
This appeal requires us to consider four questions:  (1) whether an assessment
of costs constitutes a money judgment; (2) if so, whether that assessment
constitutes a final judgment on the merits for purposes of the Act; (3) if so,
whether an award of costs in a “loser-pays” system is a penalty; and (4)
whether the assessments in this case were properly authenticated.  Because we hold
that Magellan met the statutory criteria for recognition of foreign country
judgments, we affirm the trial court’s order.

Background

The
Foreign Country Judgments

The
instruments filed for recognition resulted from a suit filed in the Turks and
Caicos Islands (TCI), a British overseas territory in the United Kingdom.[3] 
TCI has its own constitution and court system.[4]  Its judicial system
includes both a Supreme Court, the court of general original jurisdiction, and
a Court of Appeal, a court of general appellate jurisdiction.[5] 
The final court of appeal for both civil and criminal cases from TCI is the Judicial
Committee of the Privy Council (the Privy Council).[6]

NHIC
filed a winding-up petition against Magellan in TCI.  In 2006, the TCI Supreme
Court ruled in favor of NHIC, but on appeal, the Court of Appeal determined
that NHIC was not a creditor of Magellan and therefore did not have standing to
assert its winding-up petition.  NHIC appealed to the Privy Council.  In a
judgment dated July 15, 2009, the Privy Council held that NHIC did not have
standing to present a winding-up petition against Magellan and recommended that
NHIC’s appeal be dismissed with costs.  On October 15, 2009, the Queen issued
an order approving the judgment, with costs “to be assessed if not agreed.”[7]

Approximately
eight months later, on June 18, 2010, the registrar of the Privy Council issued
a taxation certificate.  The certificate (which gave an incorrect date for the
Privy Council’s judgment) stated,

I HEREBY CERTIFY that in pursuance of the Order of . . .
the Privy Council dated the 4th December 2009 the costs of the respondent in
the above appeal has been assessed on the standard basis and the sum of £48,813.17
(Forty-eight thousand eight hundred and thirteen pounds and seventeen pence[)]
has been allowed.

In a
June 21, 2010 letter to Magellan’s counsel, the costs clerk of the Privy
Council[8] acknowledged receipt of
the “completed bill of costs” from the registrar and attached the taxation
certificate.

The
next month, on July 30, 2010, the registrar in the TCI Supreme Court issued a
certificate of taxation stating that

IN PURSUANCE of the Judgement herein of the Court of
Appeal delivered on 8 September, 2006 and the Judgement herein of the Privy
Council delivered on 15 July, 2009 . . .

I CERTIFY that I have taxed the costs of [Magellan] at
the sum of $141,283.82 as being due and payable by [NHIC] to [Magellan].

These
costs assessments from the Privy Council and the TCI court do
not expressly
indicate what kind of case the assessments arose out of,
what the court’s holding was on substantive issues, or who was
the successful party.

Filing
of Notice of Foreign Judgments

Five
months later, in December 2010, Magellan filed a “Notice of Filing of Foreign Judgment”
in a trial court in Tarrant County, Texas.  The notice stated that NHIC was
“hereby notified that on December 29, 2010, [Magellan] filed with [the trial
court] . . . authenticated copies of two judgments . . . for domestication
under Chapters 35 and 36 of the Texas Civil Practice & Remedies Code.”[9]

The
notice described the two judgments as (1) a judgment rendered on July 30, 2010,
by the TCI Supreme Court in the suit between NHIC and Magellan, awarding
Magellan recovery of $141,283.82, and (2) a judgment rendered on June 18, 2010,
by the Privy Council, awarding Magellan £48,813.17.  These dates correspond
with the dates that the respective cost certificates were issued rather than
the dates of the judgments determining that NHIC did not have standing. 
Attached to the notice were copies of the costs assessments, which Magellan
asserted were the judgments it wished to have recognized.

NHIC’s
Response

On
January 31, 2011, NHIC responded to Magellan’s notice by filing a motion for
nonrecognition.  NHIC first argued that chapter 35 only applies to judgments
from United States states and territories.  Regarding recognition under chapter
36, NHIC argued that Magellan had filed only “two ‘certificates of taxation,’
rather than a judgment on the merits,” and that these certificates were not
entitled to recognition as foreign country judgments under the Act.  It also
asserted that Magellan had not obtained a judgment in its favor on the merits
of a cause of action.  NHIC further argued that the Act “specifically excludes
from its definition of ‘Foreign Country Judgment’ a mere judgment for a tax,
fine, and/or penalty, which is precisely what Magellan seeks to domesticate
here.”

Magellan’s
Reply

Magellan
responded that it had provided the court with two authenticated foreign country
judgments against NHIC and that the judgments were not for taxes.  It did not
address whether the judgments were for a penalty.  Magellan also asked the
court for an extension of time to provide the court with “additional
documentation from the respective judicial bodies . . . that will simply affirm
that the final judgments submitted to [the trial court] are not for taxes.”  The
trial court’s order on the motion allowed Magellan an additional twenty days to
submit “additional argument, authorities, and supporting material.”

Magellan’s
supplemental response attached two affidavits: one from Simon John Kemp,
Magellan’s attorney in the appeal to the Privy Council, and one from Carlos W.
Simons, Magellan’s attorney in the suit in TCI.  Both of these affidavits had
exhibits attached, including letters from the registrars at the TCI Supreme
Court and the Privy Council and copies of procedural rules from those courts.

The
Trial Court’s Orders

On
July 22, 2011, the trial court entered an order denying NHIC’s motion for
nonrecognition.  On August 9, 2011, the trial court signed a final order
denying NHIC’s motion for nonrecognition, and this appeal followed.

Uniform
Foreign Country Money-Judgment Recognition Act

The
Act provides a mechanism by which a judgment creditor under a money judgment
from a foreign country may have that judgment recognized in Texas.  When a
foreign country judgment meets the criteria set out in the Act and is granted
recognition under the chapter, the judgment “is enforceable in the same manner
as a judgment of a sister state that is entitled to full faith and credit.”[10] 
The Act defines the term “foreign country judgment” as “a judgment of a foreign
country granting or denying a sum of money other than a judgment for: (A)
taxes, a fine, or other penalty; or (B) support in a matrimonial or family
matter.”[11]  A party seeking
recognition of a foreign judgment must file with the court clerk “[a] copy of a
foreign country judgment authenticated in accordance with an act of congress, a
statute of this state, or a treaty or other international convention to which
the United States is a party.”[12]

Magellan’s
Jurisdictional Challenge

Before
we consider NHIC’s first issue, we address Magellan’s assertion that this court
lacks subject matter jurisdiction over the appeal because NHIC did not timely
file its notice of appeal.  NHIC filed its notice of appeal on August 18,
2011.  Magellan contends that when a foreign country judgment is filed, it acts
as both a petition and a final judgment, and so the time period for filling an
appeal began when Magellan first filed its notice of judgment.  It contends
that a motion for nonrecognition acts as a motion for new trial, and so NHIC had
until March 31, 2011 at the latest to file its appeal, making NHIC’s appeal
untimely.

Magellan’s
argument derives from the language in section 36.004 stating that a foreign
country money judgment “is enforceable in the same manner as a judgment of a
sister state that is entitled to full faith and credit.”  Magellan also relies
on case law holding that when a judgment creditor under a sister state judgment
files the judgment under chapter 35, the judgment “comprises both a plaintiff’s
original petition and a final judgment” and, when the judgment complies with
chapter 35, it becomes enforceable as a Texas judgment on the date it is filed.[13]  Magellan argues
that because of the language of section 36.004, this case law applies to
filings for recognition under the Act.

Under
the Full Faith and Credit Clause of the United States Constitution, judicial
proceedings from one state must be given full faith and credit in every other
state.[14] 
This clause applies only to sister-state
judgments.  There is no analogous constitutional provision requiring United
States courts to give full faith and credit to judgments of foreign countries. 
But does section 36.004 nevertheless require us to hold that NHIC missed its
notice of appeal deadline?  We do not believe it does.

The sentence
upon which Magellan relies should not be read out of context.  The rest of that
section provides that

[e]xcept as provided by Section 36.005, a foreign country
judgment that is filed with notice given as provided by this chapter, that
meets the requirements of Section 36.002, and that is not refused recognition
under Section 36.0044 is conclusive between the parties to the extent that it
grants or denies recovery of a sum of money.  The judgment is enforceable in
the same manner as a judgment of a sister state that is entitled to full faith
and credit.[15]

This
section expressly sets out when a judgment becomes conclusive between the
parties:

·       
when
it is a foreign country judgment, defined by statute as one “granting or
denying a sum of money” that is not “for . . . taxes, a fine, or other penalty;
or . . . support in a matrimonial or family matter”;[16]

·       
when
it meets the requirements of section 36.002, meaning it is a judgment on the
merits of a cause of action and is final and conclusive in the country in which
it was rendered;[17] and

·       
when
it is not refused recognition.[18]

On
its face, a judgment must meet all of these prerequisites before it becomes
conclusive and therefore “enforceable in the same manner as a judgment of a
sister state that is entitled to full faith and credit.”[19]  On its face, the Act does
not authorize the enforcement of foreign country judgments unless these
statutory requirements have been met.  Thus, because NHIC filed a motion
challenging the recognition, the judgment did not become conclusive between the
parties and enforceable until the trial court granted recognition.[20]

In a
sur-reply letter brief, Magellan points to Don Docksteader Motors to
support its position.[21] 
It notes that in that case, the Supreme Court said that because the Act was
silent about specific procedures applicable to foreign country judgment
proceedings, the enforcement procedures in chapter 35 should apply, and
therefore the appellate deadline of chapter 35 should apply.  Don Docksteader
Motors does not control in this case.  As stated in that opinion, at the
time of the litigation in that case, chapter 36 did not provide a procedure for
a party to assert nonrecognition of a foreign country judgment.[22]  The Supreme Court held that
because the chapter had no such procedure, it would look to chapter 35 for
applicable procedures for enforcement of a foreign country judgment.

Now,
of course, chapter 36 does have a procedure for asserting nonrecognition.[23]  And for purposes
of our case, chapter 36 on its face provides that a foreign country judgment
becomes enforceable like a sister-state judgment when the judgment meets the
requirements of the statute and the trial court has not refused its
recognition.[24] 
So in this case, the foreign country judgments became conclusive and
enforceable when the trial court overruled the motion for nonrecognition.[25]  The notice of
appeal was filed two days after the trial court’s order overruling the motion. 
The appeal was therefore timely.

We
will therefore consider NHIC’s issues.  All of NHIC’s issues ask this court to
review the trial court’s construction of statutory provisions and its
determination of the applicability of those provisions.  We therefore review
the trial court’s determination under a de novo standard of review.[26]

Whether
The Costs Assessments Are Judgments On The Merits

NHIC
makes two primary arguments under its first issue:  (1) the trial court erred
by recognizing the costs assessments because they are not judgments on the
merits of a cause of action asserted by Magellan against NHIC, and (2) the
trial court erred by granting recognition of the costs assessments filed by Magellan
because the assessments were not the actual judgments, were issued by
registrars, and did not dispose of any issues or claims.  We address these
arguments in that order.

1.  The Act allows
for recognition of a judgment in favor of a defendant on a plaintiff’s cause of
action.

Regarding
NHIC’s first argument, we disagree that under the Act, a defendant may only enforce
a judgment under the Act on the defendant’s own cause of action.  The Act
includes within its application a judgment “in favor of the defendant on the
merits of the cause of action.”[27] 
NHIC argues that Magellan cannot meet this requirement because Magellan did not
have a cause of action pending against NHIC.  A defendant on a cause of action
is, by definition, defending against the other party’s cause of action,
not its own.  A defendant obtains a favorable judgment if it obtains a judgment
in its favor on the plaintiff’s cause of action, and the language NHIC relies
on simply reflects that fact.  Nothing in the Act gives even a hint that it
applies to a judgment for a defendant only when the judgment grants the
defendant affirmative relief on a cross-claim.  The “in favor of the defendant
on the merits of the cause of action” language is therefore clearly not
referring to the defendant’s own cause of action.

NHIC
does not argue that a judgment dismissing a plaintiff’s claims on standing
grounds is not a dismissal on the merits of the plaintiff’s claim; it argues
only that Magellan did not obtain a judgment on its own cause of action.[28]
 We therefore do not consider the question.[29]  We overrule this part
of NHIC’s first issue.

2.  The instruments
filed by Magellan are foreign country judgments for the purposes of the Act.

NHIC’s
second argument under its first issue is that the costs assessments filed by
Magellan are not judgments.  NHIC is correct that the instruments filed for
recognition by Magellan were assessments of costs determined by a registrar
from the TCI Supreme Court and by a “costs judge” in the Privy Council rather
than by the panel of justices who determined the substantive issues in NHIC’s
appeal.[30] 
That does not, however, mean that these costs assessments may not be enforced
as judgments.[31]

The
rules relating to costs in the relevant courts are instructive as to how we
should view these costs assessments.  The Privy Council’s procedure rules
include a section on the assessment of costs.[32]  Costs are assessed by the
registrar or by a costs judge.[33] 
The rules provide that the amount of costs will be inserted into the court’s
final order.[34]  If, however, that order
is drawn up before the costs assessment has been completed, then the amount of
costs assessed will be certified by the registrar.[35]  Magellan submitted evidence
in the trial court showing that TCI has a similar procedural rule.[36]  And we note that
the U.K. Supreme Court, the final court of appeal for civil cases in the U.K.,
also provides in its rules that costs may be assessed after judgment, and this
assessment may be done by costs officers.[37] 
Thus, under the rules of procedure for the respective courts (and other courts
in the U.K.), these assessments appear to be made by court order and considered
as part of the judgment.

Neither
Magellan nor NHIC provides us with any helpful authority on whether these costs
assessments themselves constitute separate judgments and, if so, whether they
are considered to be determinations on the merits of a cause of action.  Neither
do they provide us with authority as to whether, if the costs assessments are
not independent judgments, Magellan had to file both the Privy Council opinion
and the costs assessments in order to enforce its award of costs against NHIC
in Texas.  Magellan argues that the Privy Council opinion explains why that
court’s judgment is in favor of Magellan on the merits of a cause of action,
but it does not address NHIC’s point—that the costs assessments Magellan sought
to enforce as judgments are not themselves judgments on the merits of a cause
of action.

We
first note that in the U.K., for purposes of recognizing
judgments of other European Union member states in the U.K., the term
“judgment” includes a “determination of costs or expenses by an officer of the
court.”[38] 
This
rule gives some indication that in the U.K., costs assessments are enforceable
as judgments.[39]  Furthermore, our
research indicates that across the United States, courts have routinely granted
recognition to these kinds of later-determined costs assessments as judgments
under the Act.[40]  We follow these courts
and hold that these costs assessments, which were made by order of the Privy
Council’s judgment in connection with disposing of NHIC’s claims, are
enforceable as judgments under the Act.

This
holding acknowledges the process by which costs are awarded in the U.K.  This
opinion should not be construed as holding that in every case, a costs
assessment from a foreign country court will be enforceable as a judgment.  We
hold only that in this case, under these facts, the costs assessments fall
within the definition of foreign country judgment for purposes of the Act.  We
overrule NHIC’s first issue.

Whether
Magellan Properly Authenticated the Costs Assessments

NHIC
asks in its second issue whether the affidavits attached to the supplemental
filing and used to authenticate the cost certificates properly authenticated
the certificates.  NHIC calls Magellan’s supplemental filing untimely, but it
does not make any argument about the untimeliness of the filing.  It does make
some argument about timeliness in its reply brief,[41]
although unsupported by any case law.[42]  There NHIC contends
simply that the supplemental evidence was untimely and that NHIC did not agree
to an extension to gather the type of evidence filed by Magellan.  But even in
its reply brief, NHIC does not assert that the trial court could not consider
the supplemental filing and that it was error for the court to do so.  We
therefore do not consider whether the trial court erred by considering the
supplemental filing.  We consider only whether the documents filed by Magellan
were properly authenticated.

To
be recognized under the Act, a foreign country judgment must be authenticated
in accordance with (1) an act of Congress; (2) a Texas statute; or (3) a treaty
(or other international convention) to which the United States is a party.[43] 
NHIC asserts that because Magellan did not identify either an act of Congress
or a treaty or international convention that authenticates the costs assessments,
then the documents could only have been authenticated under Texas law.  NHIC
then argues that Magellan did not meet the requirements for authentication
under Texas law.

1. 
Magellan did not have to authenticate the costs assessments using Rule 902.

NHIC
first points out that Magellan did not authenticate the judgments in accordance
with evidence rule 902.[44]  Rule 902 relates to
self-authentication of documents and provides the circumstances under which
extrinsic evidence of the authenticity of a document is not required.  A party
wishing to admit a foreign country judgment may follow the procedures set out
in that rule.  But a party may also choose to establish the authenticity of a
document under rule 901.[45]  Thus, the fact that
Magellan did not take advantage of the procedure in rule 902 is not
determinative of whether the judgments were properly authenticated because Magellan
could have properly authenticated the judgments in accordance with rule 901.

Rule
901 provides that if evidence must be authenticated prior to its admission,
this requirement “is satisfied by evidence sufficient to support a finding that
the matter in question is what its proponent claims.”[46]  The rule then
provides a nonexclusive list of means by which evidence may be authenticated.[47] 
This list includes testimony of a witness with knowledge “that a matter is what
it is claimed to be”; with respect to public records, evidence that a
publicly-filed record is from the public office where items of this nature are
kept; and any other method of authentication provided by statute.[48] 
We consider whether Magellan produced evidence sufficient to support a finding
that the judgments are what Magellan claimed them to be—costs assessments from
the Privy Council and the TCI Supreme Court.

2. 
The affidavits did not need to contain jurats.

NHIC
argues that the evidence filed with the supplemental filing could not
authenticate the costs assessments because the instruments from Kemp and Simons
did not meet the requirements for affidavits.  We disagree.

Under
the part of the government code relating to the construction of laws, the
legislature has defined the term “affidavit” to mean “a statement in writing of
a fact or facts signed by the party making it, sworn to before an officer
authorized to administer oaths, and officially certified to by the officer
under his seal of office.”[49] 
NHIC cites a 2001 Waco Court of Appeals case for the proposition that an
affidavit that does not contain a jurat[50] is not an affidavit.[51]  NHIC argues that
the instruments from Kemp and Simons do not contain jurats and, therefore, they
are not affidavits.

The
Supreme Court of Texas, however, has recently held that for satisfying the
government code’s definition of “affidavit,” while the record must show that a
purported affidavit was sworn to by the affiant, a jurat is not required.[52]  Rather, “[w]hen
a purported affidavit lacks a jurat, other evidence must show that it was sworn
to before an authorized officer.”[53] 
If the record “lacks any indication that a purported affidavit was sworn to by
the affiant, however, the written statement is not an affidavit under the
[g]overnment [c]ode.”[54] 
Mansions in the Forest was a summary judgment case, but we see no reason
why its holding should not apply to affidavits in all civil cases.[55]  Accordingly, the
affidavits submitted by Magellan meet the definition of an affidavit if
evidence in the record shows that they were sworn to before an authorized
officer.

Kemp’s
affidavit stated at the top that it was sworn to on March 23, 2011.  In the
first paragraph, Kemp stated that he “do make oath and say as follows.”  The
end of the document contains Kemp’s signature as well as a signature of a
witness.  The document has a notation stating that it was “Sworn at 25
Fenchurch Avenue this 23rd day of March 2011” before the witness and contains
this statement by the witness, who is named and identified as a solicitor: “I
certify that I am lawfully authorised by the laws of the United Kingdom to
administer Oaths in the United Kingdom.”  This evidence is sufficient to show
that Kemp’s affidavit was sworn to before an authorized officer.

Simons’s
affidavit also indicates that it was sworn to before an authorized officer. 
The end of the document contains Simons’s signature followed by text stating
that the affidavit was “SWORN at Providenciales, Turks and Caicos Islands This
24th day of March, 2011” before a named person identified as a “Commissioner
for Oaths.”  The affidavit sufficiently indicates that it was sworn to before
an authorized officer.

We
further note that NHIC did not challenge in the trial court the sufficiency of
evidence indicating that the affidavits had been properly sworn to.[56]  It argued only
that the affidavits did not contain jurats, not that Magellan failed to provide
evidence to otherwise show that the affidavits were sworn to before an
authorized officer.  Thus, any complaint about the lack of supporting evidence
was not preserved.[57]

3. 
The affidavits and exhibits authenticated the costs assessments.

We
now consider whether the costs assessments, the affidavits, and the attached
exhibits properly authenticated the costs assessments under rule 901.  With its
original filing, Magellan included a copy of the certificate of taxation from
the registrar at the TCI Supreme Court.  The document is signed by the
registrar and bears a stamp that reads, “FILED IN THE SUPREME COURT TURKS &
CAICOS ISLANDS,” with the date and time.  Magellan also filed a copy of a
letter from the register of the Privy Council, signed by her, stating, “I HEREBY
CERTIFY that . . . the costs of the respondent in the above appeal has been
assessed,” and providing the amount of the costs.  Magellan also included a
note from the costs clerk at the Privy Council, stating that she had attached
the taxation certificate to her letter.

With
its supplemental filing, Magellan included Kemp’s affidavit in which he stated
that after the Privy Council’s judgment dismissing the appeal and awarding
costs to Magellan was approved, a costs judge held a hearing to assess costs,
and a costs award was made.  Kemp attached as an exhibit to his affidavit a
letter from the registrar of the Privy Council.  Kemp stated in his affidavit that
he obtained the letter from the registrar.  In the letter, the registrar stated
that the certificate of taxation dated June 18, 2010 “is a final award of the
costs to be paid to Magellan Reinsurance Company Limited by New Hampshire
Insurance Company.”  The registrar explained that under the Privy Council’s
procedural rules, if the Privy Council’s order does not include the amount of
costs, then “the [r]egistrar certifies the amount of costs payable by a
party.”  She stated that costs were assessed at a hearing, that the certificate
of costs was final, and that NHIC failed to challenge the decision on costs
although it had fourteen days to do so after the costs assessment was made.

Kemp
also attached as an exhibit procedural rules for practice before the Privy
Council.  These rules provide that the Privy Council “may make such orders as
it considers just in respect of the costs of any appeal”; that when the Privy
Council has made an order for costs, “the claim for costs must be submitted to
the [r]egistrar”; and that “[t]he [r]egistrar will assess costs . . . and may
do so with a costs judge as an assessor.”  The rules further provide that
“[t]he amount of any assessed costs will be inserted in the order . . . but, if
that order is drawn up before the assessment has been completed, the amount
assessed will be certified by the [r]egistrar.”  Thus, the statements in the registrar’s
letter are supported by these rules, giving credence to her statements that the
registrar certifies the costs when the Privy Council’s order does not include
the costs and adding credibility to Magellan’s assertions that the Privy
Council costs assessment submitted by Magellan is in fact what it appears to
be.

Magellan
also submitted the affidavit of Carlos Simons, Magellan’s council in TCI.  Simons
stated that the amount specified in the certificate of taxation from the
registrar at the TCI Supreme Court were the litigation costs assessed by the
registrar.  Simons attached as an exhibit to his affidavit a letter signed by
the registrar at the TCI Supreme Court explaining that the certificate of costs
was a final award of costs to be paid to Magellan by NHIC.  Simons also
attached a copy of procedure rules for practice at the TCI Supreme Court. 
These rules provide that when the court has ordered a party to recover its
costs, the registrar has the power to assess costs and shall issue a
certificate for the costs allowed.

NHIC
asserts that the affidavits do not attempt to authenticate the costs
assessments and, citing evidence rule 602,[58] that Magellan’s
attorneys have no personal, first-hand knowledge of the costs assessments and
therefore could not authenticate them.  But Magellan’s attorneys did not offer
their affidavits to prove that the information in the costs assessments were
correct.  The attorney’s affidavits only sought to show that the costs
assessments attached to Magellan’s filing were what they purported to be—the
costs assessments issued by the TCI and Privy Council registrars—and that the
costs assessments were not for “taxes.”

NHIC
argues that Kemp’s affidavit does not show personal knowledge because he stated
that “[t]he facts and matters deposed herein are true to the best of my
knowledge, information[,] and belief unless stated otherwise.”  But from the
context of Kemp’s affidavit, it is clear that when he stated that he obtained
from the Privy Council registrar the letter attached to his affidavit as
exhibit 5, he spoke from personal knowledge of from whom he received the
letter.  Putting Kemp’s affidavit together with the letter that he swore he
received from the registrar, along with the costs assessment itself, which
contains a signature of the registrar that appears to match the signature of
the registrar on her letter, the evidence before the trial court was sufficient
to indicate that the Privy Council costs assessment is what Magellan claimed it
to be.[59]

Regarding
Simons’s affidavit, he stated that “[t]he facts to which I depose in this
Affidavit are within my own knowledge and are true and correct,” and he supplied
facts in his affidavit giving the basis of his knowledge.  Simons stated that
he represented Magellan in the litigation in the TCI Supreme Court from which
the costs order and costs assessment arose.  Regarding the costs assessment, he
stated, “Both parties [in litigation] are entitled to be represented at the
[costs] assessment hearing[,] and I can confirm that NHIC’s TCI counsel . . .
was present and represented NHIC at the assessment hearing from which the TCI
Certificate of Taxation arises.”  He then referenced a letter that he had attached
to his affidavit from the TCI Supreme Court’s registrar.

The
letter attached to Simons’s affidavit is a letter bearing the letterhead of the
TCI Supreme Court.  The letter, from the TCI court’s registrar, stated that the
certificate of costs is a final award of costs to be paid by NHIC to Magellan. 
The registrar also stated that according to TCI civil procedure rules, NHIC had
fourteen days to challenge the award of costs and did not do so.  The evidence
from Simons, together with the costs assessment itself, is sufficient to
indicate that the TCI costs assessment is what Magellan claimed it to be.[60]

4.  The language of
the TCI costs assessments does not raise questions about its authenticity.

Finally
under this issue, NHIC argues that from the face of the costs assessments, it
appears that the total costs assessed by TCI combined the costs at both the TCI
appeals and the Privy Council.  It contends that “[b]ecause Magellan failed to properly
authenticate the documents it submitted, the exact process the TCI courts
underwent to assess the costs is unknown, and there is a high likelihood that
domestication of Magellan’s submission would result in a double recovery.”

NHIC
appears to base its argument on a statement in the TCI costs assessment that it
was made “IN PURSUANCE of the Judgment herein of the Court of Appeal delivered
on 8 September, 2006 and the Judgment herein of the Privy Council delivered on
15 July, 2009 and the provisions of Order 62 of the Civil Rules 2000.”  We
disagree with NHIC that this language raises a question as to authenticity of
the costs assessments.  The language appears only to reflect the Queen’s order
that “those charged with administering the Government of the [TCI] and all
others whom it may concern are to ensure that” the Privy Council report,
including its award of costs, “is punctually observed and obeyed.”  Nothing in
the language of the TCI costs assessment appears to suggest that the costs
assessment included the costs of the Privy Council.

And
importantly, whether the amount of the TCI costs assessment was incorrect is a
different question from whether the document filed by Magellan was in fact the
TCI court costs assessment.  If NHIC believed that the TCI costs assessment was
incorrect, NHIC had a process to challenge the assessment in the court that
issued it, but it apparently declined to do so.  We overrule NHIC’s second
issue.

Whether
the Costs Assessments were Judgments for Penalties

NHIC’s
third and final issue asks whether the costs assessments were merely judgments
for penalties and therefore unenforceable under Texas law.  The definition of
“foreign country judgment” in the Act expressly excludes a judgment for a
penalty.[61]  Accordingly, if the costs
awarded to Magellan were assessed as a penalty, then the assessments were not
the type of judgments that can be enforced under the Act.

As
NHIC points out, the U.K. applies the “loser pays” English rule under which the
prevailing party in a suit may recover its attorney’s fees.[62] 
NHIC contends that “it is apparent that the sole purpose of the appellate court
costs assessments is to punish NHIC for adverse appellate decisions.”[63] 
This conclusory statement is not supported by any citation to authority.  The
Supreme Court of Texas has said that “statutory provisions for the recovery of
attorney’s fees are in derogation of the common law, are penal in nature[,] and
must be strictly construed.”[64]  That is the rule in this
state, where the common law evolved under the American rule and therefore an
award of attorney’s fees is in derogation of the common law.  But NHIC has
provided us with no authority on which we may base a conclusion that the English
Rule—which is a part of and not in derogation of the common law of the U.K.—is meant
to be penal in nature, and we have found none.[65]  To the contrary, all of
our research indicates the contrary and that the U.K.’s use of the English rule
simply reflects a different public policy decision.[66]

Furthermore,
other courts construing similar statutes have stated that whether a judgment is
penal in nature for purposes of determining whether to recognize a foreign
judgment “depends upon the question [of] whether its purpose is to punish an
offense against the public justice of the state, or to afford a private remedy
to a person injured by the wrongful act.”[67]  NHIC has provided us
with nothing from which we could conclude that costs are assessed under U.K.
law for any purpose other than as part of the remedy afforded to the successful
party in litigation, and we have found no authority supporting NHIC’s view of
U.K. law.  Accordingly, we overrule NHIC’s third issue.

Conclusion

Having
overruled NHIC’s three issues, we affirm the trial court’s order.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GABRIEL, JJ.

 

DELIVERED:  January 10, 2013









[1]See Tex. R. App. P. 47.4.





[2]Tex. Civ. Prac. & Rem. Code Ann. §§ 36.001–.008 (West 2008).





[3]See British Nationality Act, 1981, c. 61, §50(1), sch. 6, available
at http://www.legislation.gov.uk/ukpga/1981/61/contents; British Overseas
Territories Act, 2002, c. 8, § 1, available at http://www.legislation.gov.uk/ukpga/2002/8/contents.





[4]Foreign & Commonwealth Office, The Overseas Territories:
Security, Success and Sustainability, 2012, Cm. 8374, at 14 (U.K.), available at http://www.official-documents.gov.uk/document/cm83/8374/8374.asp;
Her Majesty’s Governor’s Office, The UK in the Turks and Caicos Islands, http://turksandcaicosislands.fco.gov.uk/en/about-us/uk-in-turks-and-caicos/overseas-territories.





[5]The Turks and Caicos Is. Const., Order 2011, SI 1681, sch. 2, § 21, available
at http://www.legislation.gov.uk/uksi/2011/1681/contents/made;
see also Stephen Kruger, Supreme Courts As Courts of General Original
Jurisdiction, 39 Int’l J. Legal Info. 51, 54, 59 (2011).





[6]Jud.
Comm. Practice Direction (PD) 1.1, available at http://www.jcpc.gov.uk/procedures/practice-directions.html.  Historical information about the Privy
Council is given in Jarvis v. Sewall, 40 Barb.
449, 455–56 (N.Y. Gen. Term. 1863) (describing the
Privy Council and stating,

[T]he court of [p]rivy [c]ouncil . . . is composed of the high officers of state . . . who
together compose what is called the “judicial committee of the [p]rivy [c]ouncil.”  It is a court of appeals from judgments rendered in the
colonial courts. . . .  It has power to award costs, and determine who shall pay them, and
to direct the manner in which its judgments in all respects shall be enforced. . . .  The only officer having any
functions analogous to that of the clerk of an ordinary court, is an officer
called the registrar, who has the powers and exercises the duties of both an
examiner and master in chancery, and such others as his majesty, under his sign
manual, may appoint.);

See also John deP.
Wright, The Judicial Committee of the Privy Council, 10 Green Bag 2d
363, 364–65 (2007) (describing the history of Canadian appeals to the Privy
Council and describing that body in this way:

The Judicial
Committee of the Privy Council was (and is) not a court. Proceedings did not go
to it as “appeals” in the formal sense but as petitions for justice “to the
foot of the Throne”. . . .  The decisions of the Committee were not
“judgments,” they were “advice” to the Monarch, and were handed down in the
form of an Order In Council.).





[7]Jarvis,
40 Barb. at 456 (“When an appeal comes before [the Privy
Council], it is referred to the judicial committee, who hear[s] the case and make a report or recommendation upon which the
sovereign makes his decision, and that becomes the judgment of the court of [p]rivy [c]ouncil.”).





[8]Jud. Comm. PD 8.1
(“The Costs Clerk is an officer in the Registry of the Judicial Committee who
acts under the direction and supervision of the Registrar.”), available at http://www.jcpc.gov.uk/procedures/practice-directions.html.





[9]Tex. Civ. Prac. & Rem. Code Ann. §§ 35.001–35.008 (West 2008
& Supp. 2012), 36.001–.008.





[10]Id. § 36.004.





[11]Id. § 36.001.





[12]Id. § 36.0041.





[13]Walnut Equip. Leasing Co., Inc. v. Wu,
920 S.W.2d 285, 286 (Tex. 1996).





[14]U.S.
Const. art. IV, § 1.





[15]Tex. Civ. Prac. & Rem. Code Ann. § 36.004.





[16]Id. § 36.001(2).





[17]Id. § 36.002.





[18]Id. § 36.004.





[19]See Presley v. N.V. Masureel Veredeling, 370
S.W.3d 425, 431 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (stating that a
foreign country judgment is enforceable in the same manners as a sister-state
judgment under the Act when it is filed in accord with the Act, notice of the
filing is given as provided by the Act, and the judgment is not otherwise
“refused recognition”); The Courage Co., L.L.C. v. The Chemshare Corp.,
93 S.W.3d 323, 330 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (stating that
a foreign country judgment becomes conclusive when (1) recognition is not
contested or (2) a contest is overruled).





[20]See Hernandez v. Seventh Day Adventist Corp., 54 S.W.3d 335, 336–37 (Tex. App.—San
Antonio 2001, no pet.); see also Jack H. Brown & Co. v. Nw. Sign
Co., 665 S.W.2d 219, 221–22 (Tex. App.—Dallas 1984, no writ) (holding that
although the statute for enforcement of sister state judgments provides that
such judgments have the same effect as a judgment of the court in which it is
filed, it has that effect only when the statute’s requirements have been
met, and “[a] judgment debtor cannot be expected to respond and take such
measures as may be available to him to avoid enforcement of a foreign judgment
unless the statutory requirements have been met”).





[21]Don Docksteader Motors, Ltd. v. Patal Enters., Ltd., 794 S.W.2d 760 (Tex. 1990).





[22]Id. at 760.





[23]See Tex. Civ. Prac. & Rem. Code § 36.0041–.044.





[24]Id. § 36.004.





[25]See
The Courage Co., L.L.C., 93
S.W.3d at 330 (stating that a foreign country judgment
becomes conclusive when (1) recognition is not contested or (2) a contest is
overruled).





[26]See MCI Sales & Serv., Inc. v. Hinton, 329 S.W.3d 475, 500 (Tex. 2010), cert. denied, 131 S. Ct.
2903 (U.S. 2011).





[27]Tex. Civ. Prac. & Rem. Code Ann. § 36.002(a)(2).





[28]See
Restatement (Second) of Conflict of Laws § 110 cmt. a (1971) (stating that a
judgment is not “on the merits” if it does not involve the substance of the
plaintiff’s cause of action, and thus a judgment for a defendant is not on the
merits if it is based on, for example, lack of jurisdiction or the plaintiff’s
capacity to sue).





[29]Pat
Baker Co., Inc. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998) (stating that an
appellate court cannot reverse a trial court’s judgment on unassigned error).





[30]See, e.g., Vickery v. Comm’n for
Lawyer Discipline, 5 S.W.3d 241, 251 (Tex. App.—Houston [14th Dist.] 1999,
pet. denied) (referring to a judgment as “the final action taken by a court of
competent jurisdiction in disposing of matters properly before it”); see
also Reaugh v. McCollum Exploration Co., 140 Tex. 322, 325, 167 S.W.2d 727,
728 (1943) (holding that a determination of which party should pay costs is
part of the judgment but that “[t]he taxing of costs is not an adjudication by
the court as to the correctness of the items taxed” and is “but the ministerial
act of the clerk”).





[31]See,
e.g., Doss v. Chambers, 188 S.W. 296, 296 (Tex. Civ. App.—Austin
1916, no writ) (“The general rule in civil cases is that, when an appellant
obtains a judgment in the appellate court deciding the case on its merits in his
favor, he also obtains a judgment against his adversary for all the costs.”).





[32]See,
e.g., Jud. Comm. (App. Jurisdiction) R. (JCR), Order 2009, SI 224, sch., rr
43–52, available at
http://www.legislation.gov.uk/uksi/2009/224/contents/made.





[33]See, e.g., id. at r 46; Sup. Ct. PD 13
1.1 (providing that costs assessments in that court are
conducted by costs officers, one of which is the senior costs judge and one of
which may be the court’s registrar), available at http://www.supremecourt.gov.uk/procedures/practice-directions.html;
Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 247 n.18,
95 S. Ct. 1612, 1616 (1975) (observing that “[i]t is now customary in England,
after litigation of substantive claims had terminated, to conduct separate
hearings before special ‘taxing Masters’ in order to determine the
appropriateness and the size of an award of counsel fees”).





[34]JCR r
50.





[35]Id.





[36]With
respect to other parts of the U.K., Northern Ireland and Scotland appear to
have similar rules.  See R. of the Ct. of Judicature (N. Ir.), 1980, SR
1980/346 (as amended), Ord. 62, r 8(6), available at http://www.courtsni.gov.uk/en-GB/Publications/court-rules/Pages/default.aspx;
Act of Sederunt (R. of the Ct. of Sess.) 1994, SI 1443, sch. 2, r 42.1, available
at http://www.legislation.gov.uk/uksi/1994/1443/contents/made.





[37]See
Sup. Ct. R. 2009, SI 1603 (L. 17), r 47–49, available at http://www.legislation.gov.uk/uksi/2009/1603/contents/made.





[38]See 2001 O.J. (L 12) 16.1.2001,
ch. 3, art. 32, available at http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:32001R0044:en:NOT;
see also CPR 74.2(c)(v) (providing rules for the enforcement of foreign
judgment in England and Wales and defining “judgment” to include “the
determination of costs by an officer of the court”), available at
http://www.justice.gov.uk/courts/procedure-rules/civil/rules/part74#IDAJR1HC.





[39]See
Tex. Civ. Prac. & Rem. Code Ann. § 36.002 (“This chapter applies to a
foreign country judgment . . . that is . . . final and conclusive and
enforceable where rendered.”).





[40]See
In re Hashim, 213 F.3d 1169, 1170–71, 1172 (9th Cir. 2000) (stating that
an English court had held the Hashims liable for costs in litigation in that
court, that the taxation proceeding to determine the costs and fees was not
held until years later, and that the costs award was entitled to comity); Thomas
& Agnes Carvel Found. v. Carvel, 736 F. Supp. 2d 730, 746 (S.D.N.Y.
2010) (enforcing as judgments a U.K. court’s costs assessments, determined
after a hearing conducted by a cost judge); Dresdner Bank AG v. Haque,
161 F. Supp. 2d 259, 261 (S.D.N.Y. 2001) (holding that a German trial court’s
judgment and three awards of cost were entitled to recognition); Otter
Valley Foods, Inc. v. Aliki Foods, LLC, No. CV094009931, 2010 WL 2573760,
at *4 (Conn. Super. Ct. May 21, 2010) (holding that a Canadian court’s award of
costs was enforceable under Connecticut’s Uniform Foreign Money-Judgments
Recognition Act); Java Oil Ltd. v. Sullivan, 86 Cal. Rptr. 3d 177, 180,
182 (Cal. Ct. App. 2008) (considering whether to uphold a trial court’s
recognition of a judgment from Gibraltar that “indicated the costs were to be
assessed by the Registrar,” referring to the registrar’s two costs assessments
as judgments, and concluding that they were enforceable under the Uniform
Foreign Money-Judgments Recognition Act); Blacklink Transp. Consultants PTY
Ltd. v. Von Summer, 18 Misc. 3d 1113(A), 856
N.Y.S.2d 496, at *1, *6 (N.Y. Sup. Ct. Jan. 9, 2008) (observing that an
Australian court assessed costs and attorney’s fees in an ancillary proceeding
conducted after trial and holding that this assessment was a judgment entitled
to recognition and enforcement); Genujo Lok Beteiligungs GmbH v. Zorn,
943 A.2d 573, 578 n.6 (Me. 2008) (stating that court orders fixing costs
awarded under judgments each qualified as “foreign judgments” even though they
were not titled “judgments”); Hazzledine v. Hazzledine, No. 95-CA-35,
1996 WL 156883, at *3 (Ohio Ct. App. Apr. 5, 1996) (determining that an award
of costs in a family law case in English court was not a judgment for support
but was a judgment for costs and that because it was a judgment granting a sum
of money, it was entitled to enforcement); Desjardins Ducharme v. Hunnewell,
585 N.E.2d 321, 323 (Mass. 1992) (reciting that the Canadian court awarded
costs to Desjardins, that the court of appeals likewise awarded costs, that the
clerk of the court of appeal fixed the costs for the appeal, and that the trial
court fixed the costs for the proceedings from that court, and holding that the
costs assessments were enforceable judgments).





[41]See City of San Antonio v. Schautteet,
706 S.W.2d 103, 104 (Tex.1986) (providing that an issue raised for the first
time in a reply brief filed on appeal should not be considered by the court of
appeals).





[42]See Tex. R. App. P. 38.1(i).





[43]Tex. Civ. Prac. & Rem. Code Ann. § 36.0041.





[44]Tex. R. Evid. 902.





[45]Tex. R. Evid. 901.





[46]Tex. R. Evid. 901(a).





[47]Tex. R. Evid. 901(b).





[48]Id.





[49]Tex. Gov’t Code Ann. § 312.011 (West
2005).





[50]See
Mansions in the Forest, L.P. v. Montgomery Cnty., 365 S.W.3d 314, 316 (Tex.
2012) (“A jurat is a certification by an authorized officer, stating that the
writing was sworn to before the officer.”)





[51]See Guinn v. Bosque Cnty., 58 S.W.3d
194, 198 (Tex. App.—Waco 2001, pet. denied).





[52]Mansions in the Forest, 365 S.W.3d at 315.





[53]Id. at 317.





[54]Id. at 315.





[55]See id. at 318 (disapproving opinions
of courts of appeals to the extent that they have held that (1) a written
statement is not an affidavit solely because it lacks a jurat or (2) the
absence of a jurat is a defect of substance that may be raised for the first
time on appeal).





[56]See id. at 317 (“When a purported
affidavit lacks a jurat and a litigant fails to provide extrinsic evidence to
show that it was sworn to before an authorized officer, the opposing party must
object to this error, thereby giving the litigant a chance to correct the
error.”).





[57]See id.





[58]See Tex. R. Evid. 602.





[59]See Tex. R. Evid. 901(a).





[60]See id.





[61]Tex. Civ. Prac. & Rem. Code Ann. § 36.001(2).





[62]See 1/2 Price Checks Cashed v. United Auto. Ins. Co., 344 S.W.3d 378, 382 & n.8 (Tex.
2011) (contrasting the “American Rule for the award of attorney’s fees, under
which attorney’s fees are recoverable in a suit only if permitted by statute or
by contract,” with the “English Rule, in which a court may award attorney’s
fees to the prevailing party in a suit”); Java Oil Ltd., 86 Cal.
Rptr. 3d at 185 (“The English rule is that generally the loser must pay the
winner’s attorneys fees.”).





[63]See Smith v. Basham, 227 S.W.2d 853,
857 (Tex. Civ. App.—Dallas 1950) (defining “penalty” as “a sum of money of
which the law exacts payment by way of punishment for doing some act that is
prohibited, or omitting to do some act that is required to be done”), aff’d,
149 Tex. 279, 233 S.W.2d 297 (1950).





[64]New Amsterdam Cas. Co. v. Tex. Indus., Inc., 414 S.W.2d 914, 915 (Tex. 1967).





[65]See Tex. R. App. P. 38.1(i).





[66]See,
e.g., Carvel, 736 F. Supp. 2d at 749, 750 (stating that
“[c]ommon-law jurisdictions have different procedural rules, some of which
reflect different public policy choices” and that “[t]he so-called ‘English
rule’ under which a loser pays the winner’s attorneys’ fees, and the usual ‘American
rule’, under which each side bears its own attorneys’ fees, reflect such
choices” and holding that English costs judgments were not unenforceable)
(citation omitted); Erbe Elektromedizin GMBH v. Canady, 545 F. Supp. 2d
491, 496–97 (W.D. Pa. 2008) (holding that the awarding of attorney’s fees in
the U.K. was not meant to punish an offense against the public justice and
instead was remedial in nature, aimed at compensating the defendant for the
damages incurred in being compelled to defend against the suit); Fla.
Patient’s Comp. Fund v. Rowe, 472 So. 2d 1145, 1147–48 (Fla. 1985) (noting
that the English rule is not in derogation of English common law), holding
modified on other grounds by Standard Guar. Ins. Co. v. Quanstrom,
555 So. 2d 828 (Fla. 1990).





[67]See Chase Manhattan Bank, N.A. v. Hoffman, 665 F. Supp. 73, 75 (D. Mass. 1987) (quoting
Huntington v. Attrill, 146 U.S. 657, 673–74, 13 S. Ct. 224, 230 (1892),
in deciding whether a foreign money judgment was enforceable under
Massachusetts’s version of the Uniform Foreign Money-Judgments Recognition Act);
see also Olympus Corp. v. Canady, 962 A.2d 671, 677, 678 (Pa. Super. Ct. 2008) (holding that an award of counsel fees
under the English “loser pays” rule was remedial rather than penal in nature
and was therefore enforceable under Pennsylvania’s Uniform Foreign
Money-Judgments Recognition Act and stating that “By initiating his complaint
in England, under English law and rules of court, Appellant implicitly
acquiesced to an award of counsel fees to the prevailing party”); Desjardins
Ducharme, 585 N.E.2d at 324 (applying Hoffman to
conclude that a Quebec judgment was not a penalty).